## The First National Bank of Joliet

### *v.*

## The Illinois Steel Company.

*Opinion filed June 18, 1898.*

1. Mortgages—*mortgage may cover rents and profits during period of redemption.* A provision in a mortgage authorizing the appointment of a receiver, in case of foreclosure, to collect the rents and profits from the commencement of suit until the expiration of the redemption period, creates a valid lien on such rents and profits, which equity will enforce, without regard to the mortgagor's insolvency, upon application by the mortgagee.

2. Same—*when court may appoint receiver though not authorized by the mortgage.* In case of foreclosure the court may appoint a receiver to collect the rents and profits during the redemption period and apply them on the indebtedness, though the mortgage creates no express lien thereon, where it appears the property is insufficient security and that the party personally liable is insolvent.

3. Same—*when court may appoint receiver after foreclosure decree and sale.* A receiver may be appointed after foreclosure decree and sale, with power to collect the rents and profits during the period of redemption and apply them on the deficiency resulting from the sale, where the mortgage creates a lien upon such rents and profits and it could not have been ascertained before sale whether there would be any deficiency necessitating such appointment.

4. Judgments and decrees—*order entered by consent of parties is binding.* An order of court entered by the consent of the parties cannot be appealed from nor can error be assigned thereon.

*First Nat. Bank v. Illinois Steel Co.* 72 Ill. App. 640, affirmed.

Appeal from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Will county; the Hon. Dorrance Dibell, Judge, presiding.

This was a bill in the nature of a creditor's bill, filed December 26, 1893, by the First National Bank of Joliet, the appellant, against the Ashley Wire Company, a corporation in Joliet, Will county, Illinois, which for many years had been engaged in the manufacture of barbed fence wire, wire nails, etc. The bill alleged the recovery of a judgment by said First National Bank of Joliet on

the 14th day of December, 1893, for $12,657.77, against
said Ashley Wire Company; that execution was issued
and delivered to the sheriff the same day, which execution
was returned, after demand made, "no property found;"
alleged the recovery of a judgment on the 8th day of
December, 1893, by John Y. Brooks, against said Ashley
Wire Company, for $11,090, upon which execution had
been issued and levied upon all the tangible personal
property of said Ashley Wire Company, and that the value
of such property so levied upon would not exceed $5000;
that the sheriff had not sold said property so levied upon,
and it was not sufficient to satisfy the said Brooks exe-
cution; alleged the execution by said Ashley Wire Com-
pany on the 19th day of July, 1893, to the Illinois Steel
Company, of a note for $67,246.24, payable on or before
two years after date, with interest at five and one-half
per cent per annum, payable semi-annually, and secured
by a mortgage on its manufacturing plant; that the said
Ashley Wire Company is insolvent and for many months
has suspended its business, and its plant has remained
idle; that it has not been able for the last year to meet
its trade obligations, and has been seriously embarrassed
in its financial affairs; that said wire corporation is and
remains in the possession of its real estate and manufac-
turing plant, and while it is not worth said mortgage
indebtedness, is a valuable property and ought not to
be allowed to deteriorate in value or be greatly hazarded
by neglect or want of care; that watchmen should be in
charge, insurance should be kept up and taxes paid; that
all this should be done in the interest of said corpora-
tion, its stockholders and creditors generally; that said
corporation is without means to protect and preserve
said property, keep up its insurance or taxes; that the
tangible property levied upon is of a kind and character
so peculiar in its nature that it could not be sold at ordi-
nary execution sale except at a grievous sacrifice; avers
that the interests of defendant and all its creditors de-

mand that a receiver should be appointed of its assets, both equitable and tangible; that said receiver should be directed to take possession of said manufacturing plant, its books of account, its equitable assets and property.

The Ashley Wire Company, John Y. Brooks and Thomas Hennebry, as sheriff, were made parties defendant. Although the bill showed that the Illinois Steel Company of Chicago held a first mortgage on the Ashley Wire Company plant, machinery, etc., and was the principal creditor, yet it was not made a defendant to the bill.

The appearance of the defendants was entered, and on the 26th day of December, 1893, the defendants not objecting, the court appointed George W. Bush receiver. The order invests him with all the authority and power usually granted receivers of courts of chancery, and directs that he at once take possession of the real estate and manufacturing plant of said Ashley Wire Company, together with all the machinery, tools, implements and appliances connected therewith, and constituting real estate, as part and parcel of said plant; that he care for all such property that it may not be wasted or deteriorate for want of proper care; that he keep the buildings insured in responsible insurance companies in a reasonable amount, and that he pay all taxes legally levied upon such real estate. It was further ordered that the said sheriff turn over to the receiver all the personal property levied upon by him under the execution in favor of John Y. Brooks, such sheriff to retain the execution, and the lien of such execution is preserved upon all such property levied upon, and the proceeds thereof levied upon by said sheriff and turned over to said receiver.

The receiver presented a petition on February 19, 1894, as to the payment of taxes, which states that there was duly assessed against and levied upon the personal property of said Ashley Wire Company, for the year 1893, $799.10 taxes, and that he has no money with which to pay said taxes or the real estate taxes then due, and

prays that an order be entered authorizing him to pay such taxes and that he may be permitted to borrow money therefor. On the 26th of February, 1894, an order was entered authorizing the receiver to pay the taxes assessed upon the real estate, and authorizing the receiver to borrow money for that purpose at such legal rate of interest as he may be able, and to issue therefor his receiver's certificate, which was by order of court declared to be a first and prior lien upon the real estate of said Ashley Wire Company. The court denied the prayer of the petition as to the payment of the personal property tax.

On March 5, 1894, the Illinois Steel Company asked leave of the court to make George W. Bush, receiver, a party defendant to a chancery proceeding, which the court granted, and on the 7th of March, 1894, the steel company filed a bill to foreclose its mortgage against the Ashley Wire Company plant, making said Ashley Wire Company, the First National Bank of Joliet, John Y. Brooks, and George W. Bush, the receiver, defendants.

On the 12th day of July, 1894, after commencement of the foreclosure proceedings, the receiver borrowed of the Illinois Steel Company $2037.82 in pursuance of the court's order, for the purpose of paying taxes, and issued a receiver's certificate therefor.

The mortgage upon which the foreclosure proceedings were based, against the Ashley Wire Company, was to secure the note for $67,246.24, payable on or before two years after date, with interest at five and one-half per cent per annum, and the mortgagor expressly covenanted to keep the buildings insured for $50,000 for the benefit of the Illinois Steel Company, mortgagee. It also contained a clause authorizing the appointment of a receiver, with power to collect the rents, issues and profits during the period of redemption, in case of a foreclosure of the mortgage, and that such rents and profits should be applied towards the payment of the indebtedness.

Answers were filed by the Ashley Wire Company and the First National Bank, defendants. A final decree of foreclosure was awarded the Illinois Steel Company, January 14, 1895, and the property was sold to the said steel company for $70,000. The master reported an unpaid balance, and a deficiency decree or judgment under the statute was entered for the deficit of $5316.50, with interest from March, 1895, and execution was awarded thereon.

On the 10th of April, 1895, the Illinois Steel Company filed its petition in the foreclosure case, setting up the decree of foreclosure, and the sale, the deficiency decree for $5316.50, and the foregoing provision in regard to the appointment of a receiver by the court to collect rents until the time of redemption, and asking for the appointment of a receiver. A hearing was had June 20, 1895, and the court refused to appoint a new receiver, but extended the receivership of George W. Bush existing over the property of the Ashley Wire Company by virtue of an order in the case of the First National Bank of Joliet, so that said receiver should stand as a receiver appointed in the case of the Illinois Steel Company against the Ashley Wire Company, and that the receivership be extended to include the property and effects of the Ashley Wire Company, and the receiver was directed to receive the rents and hold the same for all persons who should be found entitled thereto. The receiver had previously, under the order of the court, leased the Ashley wire plant for one year from December 1, 1894, for $6000, with the privilege of another year, at the option of the lessee, on the same terms. The receiver collected in all for rents $12,000, and after paying the taxes and expenses there was left in his hands $4373.48. On March 3, 1897, the petition of the Illinois Steel Company was, by agreement of parties, consolidated with the cause of *First Nat. Bank of Joliet* v. *Ashley Wire Co. et al.*, and were to be heard and disposed of as one case by decree to be entered in the case of *First Nat. Bank of Joliet* v. *Ashley Wire Co. et al.*

The principal contention is over the distribution of the balance of $4373.48, the trial court decreeing this amount to be paid the Illinois Steel Company out of the moneys in the receiver's hands derived from rents, to be endorsed on the deficiency decree. From this decree of the circuit court appellant appealed to the Appellate Court for the Second District, which affirmed the decree of the circuit court, and from the judgment of the Appellate Court appellant has appealed to this court, and asks for the reversal of the judgment of the Appellate Court.

GEORGE S. HOUSE, for appellant:

In equity, for all beneficial purposes the mortgagor is the owner of the property mortgaged, and is not required to account to the mortgagee for rents and profits. Before condition broken the mortgagor may not be disturbed in the enjoyment of the rents and profits of the mortgaged property. After condition broken the mortgagee may continue to take the rents and profits as an owner, without liability to account therefor until such time as he is disturbed in this right by the mortgagee. The mere filing of a bill to foreclose, with a prayer for a decree of foreclosure, in and of itself creates no lien on the rents and profits accrued or to accrue during the pendency of the foreclosure proceedings. *Scott* v. *Ware*, 65 Ala. 174; *Haas* v. *Building Society*, 89 Ill. 498; *Gilman* v. *Telegraph Co.* 91 U. S. 603; *American Bridge Co.* v. *Heidelbach*, 94 id. 800; *Kountze* v. *Hotel Co.* 107 id. 392; *Teal* v. *Walker*, 111 id. 248; *Faulkner* v. *Printing Co.* 79 Ala. 359; *Dow* v. *Memphis*, 124 U. S. 652; *Sage* v. *Memphis*, 125 id. 375; *Bank* v. *Sheaphurd*, 127 id. 500; *Astor* v. *Turner*, 11 Paige, 436; *Howell* v. *Ripley*, 10 id. 43; *Childs* v. *Hurd*, 32 W. Va. 67; 15 Am. & Eng. Ency. of Law, 819; Jones on Mortgages, secs. 670, 772.

An assignee for the benefit of creditors, under an assignment, as against a mortgagee, takes the rents and profits until the mortgagee disturbs such assignee in his possession. *Seigniori* v. *Pate*, 32 S. C. 134.

A mortgagor may, as against the mortgagee, for value and in good faith assign rents and profits. *Leids* v. *Gifford,* 41 N. J. Eq. 464.

A judgment creditor who, through a receiver, has impounded to his exclusive use the rents and profits of the mortgaged property of his judgment debtor, takes such rents and profits, as against the mortgagee, until such mortgagee asserts his prior right. *Scott* v. *Ware,* 65 Ala. 174; *Williamson* v. *Gerlach,* 41 Ohio St. 682.

The inclusion in and conveyance by the mortgage of the rents and profits or income of the mortgaged property as part and parcel of the subject matter of the grant is not sufficient to alter the rule. *Railway Co.* v. *Express Co.* 81 Ill. 534; *Moore* v. *Titman,* 44 id. 367; *Silverman* v. *Insurance Co.* 5 Ill. App. 124; *Davis* v. *Dale,* 150 Ill. 239.

The appointment of a receiver to take the rents and profits in a foreclosure proceeding is the exercise of one of the extraordinary powers of a court of chancery. The exercise of the right rests in the sound discretion of the chancellor. The exercise of this right by the chancellor may not be the subject matter of a contract between the mortgagor and the mortgagee, binding upon the chancellor, to be enforced as a legal and valid contract. Such a contract is not enforceable from and on the simple fact that such contract exists and is presented as contained in the mortgage. When such contract exists in the mortgage the chancellor may decline to appoint a receiver. The chancellor may refuse to appoint a receiver at the application of a prior mortgagee when such prior mortgage contains such an agreement, and at the same time may appoint a receiver at the application of and for the exclusive benefit of a junior mortgagee when such junior mortgage contains no such agreement. The facts may be such that for the chancellor to do otherwise would be such an abuse or unwarranted exercise of judicial discretion as to be reversible error. *Haas* v. *Building Society,* 89 Ill. 498; *Clark* v. *Building Ass.* 58 Ill. App. 311.

A decree of foreclosure and sale is a final adjudication of all and every right of the parties to the suit growing out of and resulting from such a contract of mortgage. Thereafter, on or by the contract of mortgage, the court is in the premises entirely without power, otherwise than simply to execute and give effect to the decree of foreclosure and sale already and theretofore entered. *Seligman* v. *Laubheimer*, 58 Ill. 124; *Ogle* v. *Koerner*, 140 id. 170; *Davis* v. *Dale*, 150 id. 239.

The law requires that in every foreclosure sale the right of redemption, and every right incident thereto, shall be preserved. The language of the statute is mandatory and imperative, and provides for no exception. *Locey Coal Mines* v. *Coal Co.* 131 Ill. 9.

GARNSEY & KNOX, (ELBERT H. GARY, of counsel,) for appellee.

Mr. JUSTICE CRAIG delivered the opinion of the court:

It is first contended by appellant that the Illinois Steel Company, the mortgagee, having obtained its decree of foreclosure and sale and applied the proceeds, the mortgage has accomplished its purpose and is *functus officio*,—that no further rights or equities can be enforced by the Illinois Steel Company. The claim of appellee is, that the provision in the mortgage authorized the appointment of a receiver by the court to collect the rents and profits during the period of redemption, and, as the sale under the foreclosure decree did not pay the debt, to apply them in payment of the deficiency.

The agreement in the mortgage is as follows: "Upon the filing of any bill to foreclose this mortgage, in any court having jurisdiction thereof, such court may appoint A. F. Knox, or any proper person, receiver, with power to collect the rents, issues and profits arising out of said premises during the pendency of such foreclosure suit, and until the time to redeem the same from any sale that

may be made under any decree foreclosing this mortgage shall expire; and such rents, issues and profits, when collected, may be applied toward the payment of the indebtedness and costs herein mentioned and described." Under this clause in the mortgage a lien is given, by express words, upon the rents and profits, and such an equitable lien a court of equity will enforce.

Rents and profits are the subject of mortgage. Jones in his work on Mortgages (vol. 1, sec. 140,) says: "A mortgage may be made of rents under a lease, and although a right of entry be given to the mortgagee, the mortgage is a mere security, like any other mortgage of real estate, and the mortgagor remains the real owner until foreclosure and sale." In section 771 he says: "A mortgagee has no specific lien upon the rents and profits of the mortgaged land *unless* he has in his mortgage stipulated for a specific pledge of them as part of his security." This was expressly stipulated in this mortgage given by the Ashley Wire Company to appellee. Had there been no deficiency after the foreclosure sale of the Ashley Wire Company property and plant, the rents would have belonged to the owner of the equity of redemption. Under the express agreement in the mortgage, there being a deficiency of $5316.50 after the sale, the Illinois Steel Company had an equitable right to have the rents and profits applied towards the payment of the deficiency decree, from the time of the foreclosure sale until the expiration of the time of redemption, and this right might properly be enforced on an application to the court to appoint a receiver.

The contention by appellant in this case that the enforcement of this provision rests entirely in the sound discretion of the chancellor, is not tenable. The chancellor was authorized to act under this clause in the mortgage, and appoint a receiver for the collection of the rents and profits during the period of redemption, to be applied on the deficiency decree.

In the case of *Oakford* v. *Robinson*, 48 Ill. App. 270, which is similar to the one at bar, the mortgage contained a clause authorizing the appointment of a receiver, with power to take possession of the premises and collect the rents due and to become due thereon during the period allowed for redemption, and to apply the same in payment of any deficit should the premises prove insufficient to pay the amount secured by the mortgage. In the decision of the case the court said: "The rents and profits of the land, as well as the land, was pledged by the mortgage for the security and payment of the amount due the appellee. This authorized the appointment of a receiver, in the discretion of the court, without regard to the solvency of the mortgagor. (2 Jones on Mortgages, sec. 1516; 8 Am. & Eng. Ency. of Law, p. 234.) And such appointment was lawfully made, though by a decree subsequent to the original decree. (8 Am. & Eng. Ency. of Law, p. 239.) By the appointment of the receiver the appellants obtained an equitable lien on the rents and profits of the land during the statutory period allowed for redemption, if necessary for the full payment of any deficiency in the security. In support of this view, see 1 Jones on Mortgages, secs. 773, 774, 775; 2 Jones on Mortgages, sec. 1536; High on Receivers, secs. 643, 644; Beach on Receivers, sec. 532."

That a court of equity has power to appoint a receiver and grant equitable relief where there are no express words in the mortgage giving a lien upon rents and profits derived from the property, is conceded. In such a case, whether relief will be granted is dependent upon the facts and circumstances at the time the application is made. This court said in *Haas* v. *Chicago Building Society*, 89 Ill. 498 (at p. 502): "We find the decided weight of American authority to be in favor of the proposition that the court may, even when the mortgage does not by express words give a lien upon the income derived from such property, appoint a receiver to take charge of it and

collect the rents, issues and profits arising therefrom.
Such action will not be taken, however, unless it be made
to appear the mortgaged premises are an insufficient
security for the debt, and the person liable personally
for the debt is insolvent, or at least of very questionable
responsibility. A combination of these two things seems
to be required in all the cases we have examined, and in
one or more of the States it is held necessary still other
elements should be conjoined to these before such pro-
cedure is justified." Tested even by this requirement, if
the mortgage did not give a lien by express words, or
authorize the appointment of a receiver, the facts in the
case at bar show that the court committed no error. The
deficiency decree itself evidences the fact that the Ashley
Wire Company's property was insufficient security for the
mortgage debt, and the facts established the allegation
in the petition that the Ashley Wire Company, the mort-
gagor, was insolvent. Undoubtedly, a court of equity
exercises a certain discretion, even where express words
are used for the purpose of giving a lien on the income
of the mortgaged property. The court must determine
whether the language used in the mortgage is sufficient
to give a lien on the income. In the one case the author-
ity arises from the contract, the express words giving a
lien on the rents and profits; in the other the court exer-
cises its equitable powers under the facts and circum-
stances presented at the time the application to appoint
a receiver is made.

Appellant also contends that the final decree foreclos-
ing the mortgage ought to have provided for a receiver
to take possession of the rents and profits of the Ashley
Wire Company pending the redemption; that a decree of
foreclosure and sale, as to all questions that might have
been adjudicated between the parties, is final. It could
not be ascertained *until after the sale* whether there would
be a deficit requiring the appointment of a receiver to
collect the rents and profits during the time of redemp-

tion.   Under the decree of foreclosure the property described in the mortgage was sold.   The rents and profits to accrue during the period of redemption were not sold, and no order could be entered until it was ascertained at the foreclosure sale that the mortgaged premises were insufficient to pay the indebtedness evidenced by the mortgage.   In *Haas* v. *Chicago Building Society, supra,* it was said (p. 506): "The necessity for the appropriation of the rents to the payment of the mortgage debt may frequently not appear until after both decree and sale.   The amount due is often matter of dispute, and can only be determined by the decree, and what the property will sell for can only be ascertained with certainty from the result of the judicial sale.   If an appropriation of the rents on the indebtedness is justified by the surrounding facts before sale, we see no good reason why the same and more weighty facts existing after sale may not warrant a similar procedure.   The security, plainly, is not exhausted by the sale, for there is a fund included in it which is secondarily liable.   It is true, the mortgagee has elected to foreclose and sell; but then he has pursued that remedy to the end and without getting satisfaction of his debt, and he may avail himself of any just and equitable means of collecting the residue,—not that he may have such extraordinary remedy in all cases of a deficit in the proceeds, but only where it is indispensably necessary for his protection, and just and equitable.   We hold, then, both upon the principles of equity that lie at the foundation of the chancery court, and upon authority, a receiver may sometimes be allowed after decree and sale, and that a mortgagee does not, in all cases, exhaust his security by a foreclosure and sale.   It is, however, a power that the chancellor will be slow to exercise except in an extreme case, and to prevent palpable wrong and injustice."

The cases of *Seligman* v. *Laubheimer*, 58 Ill. 124, *Ogle* v. *Koerner*, 140 id. 170, and *Davis* v. *Dale*, 150 id. 239, cited by appellant in support of its contention that a decree of

foreclosure and sale extinguishes the mortgage and renders the mortgage *functus officio*, are decided on a state of facts entirely different from the facts in this case. In *Seligman* v. *Laubheimer*, after a sale for less than the debt, a junior mortgagee redeemed, and a petition was filed to order a re-sale to pay the balance due the first mortgagee. It was held that as to the property sold the mortgage was not operative and a re-sale could not be had. No question of a mortgage of rents accruing during the statutory period of redemption was involved. In *Ogle* v. *Koerner* the facts were the same as to the mortgage, the sale, and redemption by an assignee of a second mortgage, who was a party, as in the *Seligman case*. The tenor of the case as to its application here may be seen by the following quotation from the court's opinion (p. 179): "A mortgage, or, as in this case, a deed of trust in the nature of a mortgage, vests in the party secured a lien upon the mortgaged premises. By virtue of that lien the mortgagee is entitled to have the mortgaged property sold under a decree of foreclosure and the proceeds of the sale applied to the payment of the debt secured. This is the mode provided by law for the enforcement of the lien, and when the lien has been once enforced by the sale of the property it has, as to such property, expended its force and accomplished its purpose, and the property is no longer subject to it." In *Davis* v. *Dale* a mortgage was foreclosed. Pending foreclosure a receiver was appointed. The property was sold for the full amount of the debt, interest and costs, but the receiver was continued, as appears, unnecessarily. The court said (p. 243): "The only purpose of appointing a receiver at the instance of the mortgagee or *cestui que trust* under or trustee in the trust deed, is to preserve the security of the mortgage or trust deed, and apply the rents, issues and profits, when necessary, in discharge of the indebtedness; and it follows, necessarily, that where the property is bid off at the foreclosure sale for the full amount of the

decree, interest and cost, as was here done, the necessity for continuing the receiver ceases, and he should be discharged and the possession restored to the owner of the equity of redemption. In any event, the possession of the receiver, and his receipt of the rents and profits arising from the property, would be for the benefit of the person entitled to the same, so that the parties acquired no additional right because the fund is in the hands of the receiver."

The question involved in this case, to-wit, where the property sold does not pay the mortgage debt, and where the mortgage has a provision that the rents and profits may be applied toward the payment of the indebtedness and costs, was not before the court in either of the cases cited by appellant. Here the receiver was properly appointed after the foreclosure decree and sale, as the security of the steel company was not exhausted by the sale. Moreover, the necessity for the appointment of a receiver and the collection of the rents and profits, and their application to the payment of the deficiency, did not appear until after the foreclosure decree and sale.

Appellant also contends that the court erred in directing the receiver, in its several orders, to pay the taxes on the property of the Ashley Wire Company out of the funds in his hands derived from rents of the real estate. Appellant filed its bill to have the equitable assets of the Ashley Wire Company applied to the satisfaction of its judgment, and also to have these taxes paid by the receiver out of moneys collected by him. The bill alleges that said corporation defendant is and remains in the possession of its real estate and manufacturing plant, and while not worth the said mortgage indebtedness, is a valuable property, and ought not to be allowed to deteriorate in value or be greatly hazarded by neglect or want of care; that watchmen should be in charge, insurance should be kept up and *taxes paid;* that all this should *be done in the interest of said corporation, its stockholders and*

*creditors generally;* that said corporation is without means to protect and preserve said property, keep up its insurance or pay the taxes, and is without means to preserve, care for and collect its equitable assets. The receiver was appointed on appellant's motion, and its own solicitor's name is recited in the order of the court December 26, 1893, *inter alia:* "That upon obtaining possession he properly care for all such property, to the end that it may not be wasted or deteriorate for want of proper care; that he keep the buildings and all improvements insured in responsible insurance companies in a reasonable amount, and that he pay *all taxes and assessments* legally levied upon such real estate." This order of the court has never been rescinded, so far as the record shows. The order of March 11, 1895, authorizing the receiver to pay the taxes of 1894, recites: "It is therefore ordered, adjudged and decreed by the court that the said George W. Bush, as receiver, out of the moneys in his hands pay to the said township collector the personal property taxes assessed against the said Ashley Wire Company for the year 1894, being the sum of $669.12, taking proper receipt therefor, and that said receiver in the making of said payment, *all parties in interest in open court consenting thereto,*" etc. On June 20, 1895, the receiver, by appellant's counsel, presented his petition, and in the order of the court directing him to pay the taxes on the real estate the same order of consent appears. In *Armstrong* v. *Cooper*, 11 Ill. 540, this court said: "A decree made by consent cannot be appealed from, nor can error properly be assigned upon it. Even a rehearing cannot be allowed in the suit, nor can the decree be set aside by a bill of review.— 1 Barb. Ch. Pr. 373." (*Smith* v. *Kimball*, 128 Ill. 583; *Roby* v. *Title Guarantee Co.* 166 id. 336.) These orders being made at the request of appellant, and by consent, it cannot question their validity.

Objection is also made to the order of court directing the payment of the real and personal taxes for the year

1895 by the receiver. The amount paid was $1874.41. The order extending the receiver, on the petition of the Illinois Steel Company, was made June 20, 1895, authorizing him to receive the rents and profits, to be held by him subject to the order of court. The redemption from the sale under the mortgage foreclosure of the Illinois Steel Company against the Ashley Wire Company expired June 9, 1896. This money derived from rents belonged to the Illinois Steel Company by virtue of the specific lien in the mortgage, and the receiver having paid these taxes from funds belonging to appellee, appellant can not complain.

Finding no reversible error in the record, and the decree of the court appearing to be equitable, the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*