BOYCE v. CONTINENTAL WIRE CO. et al. WOLFE et al. v. BOYCE et al. AMERICAN STEEL & WIRE CO. OF NEW JERSEY v. WARE. SAME v. WOLFE (two cases). SAME v. WOLFE et al. (two cases).

(Circuit Court of Appeals, Seventh Circuit. October 6, 1903.)

Nos. 965, 966, 967, 968, 970.

**1. MORTGAGES—APPOINTMENT OF RECEIVER IN FORECLOSURE SUIT—RIGHT TO NET INCOME.**

When a receiver has been appointed in a suit for the foreclosure of a mortgage on the ground, either admitted or established, of the insolvency of the mortgagor and the inadequacy of the security, the equitable right of possession and prima facie the right to the net income derived from the property is in the mortgagee.

**2. SAME—ESTOPPEL—OPPOSING USE OF PROPERTY.**

A receiver was appointed for the manufacturing plant of a corporation in a suit to foreclose a mortgage thereon, with the consent of the mortgagor, on the ground that it was insolvent, and had no other property, and that the security was inadequate. Subsequently certain judgment creditors intervened and joined with the mortgagor in a petition for an order authorizing the receiver to operate the plant under an offer made by a third party. The sole owner of the mortgage bonds appeared and opposed such order, but the same was made, and the plant operated thereunder during the term of the receivership. The proceeds realized from the sale of the property left a deficiency due on the mortgage debt. *Held*, that the mortgagee was not estopped to assert its prior right to the net earnings of the receivership as against the judgment creditors by the fact that it opposed the use of the property by which such earnings were made, nor were its motives in such opposition material.

---

¶ 1. Foreclosure of mortgages in federal courts, see note to Seattle, L. S. & E. Ry. Co. v. Union Trust Co., 24 C. C. A. 523.

See Mortgages, vol. 25, Cent. Dig. § 1384.

**8. SAME—NECESSITY OF DEFICIENCY DECREE.**

A deficiency decree, equivalent to a judgment at law, in favor of a mortgagee after a foreclosure sale of the mortgaged property, is not essential to entitle the mortgagee to assert the right to the earnings of the receivership in the foreclosure suit, which constitute a fund for distribution by the court in such suit.

Appeals from the Circuit Court of the United States for the Southern District of Illinois.

In 1896 the Continental Wire Company made a trust deed of its manufacturing plant to Boyce, trustee, to secure the payment of 125 bonds, of $1,000 each. The trust deed did not specifically pledge the rents and profits, but it did provide that on default the trustee might take possession.

The indebtedness having become due and remaining unpaid, the trustee in October, 1898, filed his bill to foreclose, making the Continental Wire Company sole defendant. The bill showed the insolvency of the defendant, alleged the lack of other property out of which the debt could be collected and the insufficiency of the trust estate, and prayed for the appointment of a receiver to take possession of the plant. The defendant appeared, and consented to the appointment of a receiver, and Boyce was thereupon appointed. He was empowered to collect the rents, issues, and profits of the premises, but he was not directed nor specifically authorized to operate or contract with respect to the operation of the plant; and the defendant surrendered possession to the receiver.

In November, 1899, appellees Ware, Wolfe, and Wolfe, judgment creditors of the Continental Wire Company, asked leave to intervene. And thereupon they joined the Continental Wire Company in a petition that the court direct the receiver to operate the plant in accordance with a proposition made by the Merchants' Wire & Nail Company. That company proposed to furnish money and material, and to pay the receiver $2,000 a month in addition, if the receiver would run the mill on such goods and in such manner as the company directed, and turn over to it the product. The petitioners represented that an acceptance of the proposition would benefit all creditors, and that if the plant were put in operative condition it would bring enough on foreclosure sale to pay the debt secured by the trust deed. Thereupon the American Steel & Wire Company, appellant, appeared, and showed that it owned and held all the bonds, and it objected to the receiver's operating the plant "because (1) said receiver was appointed for the sole purpose of collecting, preserving, and caring for the mortgaged premises; (2) said receiver has no power under the order of appointment to borrow money wherewith to operate the property; (3) the court has no power to authorize said receiver to undertake the operation of said plant, or to conduct the business of manufacturing wire or other products, or to borrow money or to incur any liability for such purpose, the property in question being charged with no public interest or duty, and the receiver possessing no function other than that of a custodian of said property; (4) to allow said receiver to operate said plant or to borrow money for such purpose or to incur any liability on that account might subject the mortgaged premises to the payment of losses thereby incurred, and would endanger the lien of the mortgage, and hazard the security of your petitioner as holder of said bonds." The court overruled these objections, and ordered the receiver to operate the plant under the directions of the Merchants' Wire & Nail Company, with the limitation, however, that the mortgaged property should not be liable in any way for the expense of operation. Appellant moved to vacate the order, stating as an additional ground that the operation of the plant would depreciate the value of the wire nail and barbed wire machines much more than to allow the machinery to stand idle, and supported the motion by the affidavit of a mechanical engineer and patentee of a wire machine. This motion was never passed upon. December 30, 1899, a decree of foreclosure and sale was entered, adjudging $148,000 to be due upon appellant's bonds. At the sale, February 6, 1900, the property was sold for $100,000. The report of sale, showing a balance of $60,000 due on appellant's bonds after payment of costs and compensation to the master, the receiver, and solicitors, was confirmed March 15, 1900.

Appellant on June 1, 1900, petitioned for the entry of a deficiency decree, but the court never ruled on it. The receiver continued to operate the plant under the court's order until the expiration of the redemption period, and surrendered the plant to the purchaser on May 7, 1901. The receiver then had on hand about $28,000 as the net profit from operating the plant. On May 18, 1901, appellant filed its petition that the balance in the receiver's hands be applied on its deficiency. Appellees Ware, Wolfe, and Wolfe resisted this, and filed cross-petitions. By its decree of June 26, 1902, from which these appeals are taken, the court, after allowing certain sums to the receiver and his solicitor, awarded the balance to appellees Ware, Wolfe, and Wolfe.

Logan Hay and Harry B. Hurd, for appellants.

P. B. Warren, for appellees.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

BAKER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The bill was against the mortgagor corporation alone. It appeared and consented to the appointment of a receiver. It thus virtually confessed at the beginning, as it did explicitly in the foreclosure decree, its insolvency, the lack of other property, and the insufficiency of the mortgaged estate to pay appellant's bonds. By this action, and by voluntarily turning over the plant to the receiver, the mortgagor impregnably established, as against itself, that at the time the bill was filed its right of possession had ceased. And the facts respecting insolvency, inadequacy of the security, and the nature of the property would have warranted the court in taking the possession away from the mortgagor over its resistance. Kountze v. Omaha Hotel Co., 107 U. S. 378, 2 Sup. Ct. 911, 27 L. Ed. 609; Grant v. Phœnix Life Ins. Co., 121 U. S. 105, 7 Sup. Ct. 841, 30 L. Ed. 905; First National Bank v. Illinois Steel Co., 174 Ill. 140, 51 N. E. 200.

In the original order of appointment the receiver was authorized to collect the rents, issues, and profits of the trust estate. But there were none, for the plant was held and run by the mortgagor until surrendered to the receiver. If, however, after the suit was pending and before the receiver was appointed, the mortgagor had leased the plant, it would have been the duty of the receiver under the original order not only to seize the corpus, but to collect the rents, and, the insolvency of the mortgagor and the inadequacy of the security being established, to apply the net income, under the court's direction, upon the remainder of the mortgage debt.

When the judgment creditors, a year later, came into the case, they adopted the situation as it then existed. They joined the mortgagor in asking the court, through its officer, the receiver, to operate the plant. That presented an administrative question for the court to solve as it thought for the best interest of all the parties. And in the absence of waiver or estoppel, the fruits of possession should go according to priority of right of possession, no matter what party presented the administrative question. Daniell's Chan. Prac. (6th Am. Ed.) 1740; Miltenberger v. Logansport R. Co., 106 U. S. 286, 1 Sup. Ct. 140, 27 L. Ed. 117; Cross v. Will County Nat. Bank, 177 Ill. 33, 52 N. E. 322; Williamson v. Gerlach, 41 Ohio St. 682.

The judgment creditors assert that a waiver or an estoppel arose against appellant by its filing its objections to the petition for the operation of the plant. The first two grounds of objection showed that the receiver could not operate the plant without a further order from the court. This was recognized as true by the appellees and the court, and no party has since changed his attitude with respect to that fact. The third ground raised the question whether, the mortgagor being insolvent and the security inadequate, the court could lawfully operate a private manufacturing plant over the objection of the mortgagee whose right of possession had ripened. Surely a party is not to be penalized for propounding a question of law which the court thinks is either unsound or irrelevant under the circumstances. The fourth urged the court not to imperil the already inadequate security by allowing receiver's certificates or expenses of operation to become liens ahead of the mortgage. And the court accordingly limited the order. These objections of appellant did not create an estoppel in favor of the judgment creditors. Appellant's representations were made to the court, not to them. They took no steps relying upon assurances by appellant. And the order was made despite the objections. Nor did appellant's opposition to the operation of the plant constitute a waiver of its claim arising from its priority of right of possession. Appellant said to the court, in effect: "The receiver cannot operate the plant unless the original order of appointment is broadened. That should not be done, because you have no right to run the plant; but, if you think otherwise, you ought not to create liens ahead of mine." This was far from saying: "If you sustain my objections, these judgment creditors, of course, will get nothing; but if you overrule them, I, who equitably am the owner and entitled to the possession of this plant, agree that the judgment creditors shall have all that may be made and I will bear the loss from depreciation."

Appellees say it was an "open secret" in the court below that appellant is a "trust," and that its opposition was inspired by its wish to prevent the product of this plant from coming into competition with its goods. Even if this was established by the record, it would be irrelevant. A court should act upon the merits of demurrers, motions, and objections, and not upon the purposes of parties in presenting them.

It is claimed that the judgment creditors made an "equitable levy" upon the rents, issues, and profits by filing their petition for the operation of the plant. When the petition was filed there was nothing to seize but the corpus, and it equitably belonged to appellant, and was already in the hands of the court to be devoted to the payment of appellant's bonds. The judgment creditors did not file the petition. They joined the appellee mortgagor in asking that the plant be operated. If the mortgagor alone had presented the same facts, the court, viewing the situation as it did, probably would have made the same order; and then it would scarcely be said that the mortgagor should be paid the rents, issues, and profits in preference to the mortgagee. How the equities are changed by the joinder of the judgment creditors, who claim through the mortgagor, is not ap-

parent to us. And, at all events, the petitioners did not present the issue that they were entitled to the fruits of possession despite the insolvency of the mortgagor and the inadequacy of the trust estate; but, on the contrary, they explicitly represented to the court that in their judgment the plant, if operated, would bring enough to pay the mortgage debt in full, and leave something over for other creditors. On that basis the order was secured.

Finally, as a technical obstacle to reversal, appellees insist that appellant can have no relief, because a deficiency decree was not, and could not be, entered in its favor. If a deficiency decree could properly be entered in favor of a bondholder in a suit by the trustee, appellant made its motion promptly, and is not to be prejudiced by the court's passing over the matter and entering an adverse final decree of distribution. But this is not a case in which it is necessary to have a deficiency decree (equivalent to a judgment at law) under which by an execution the marshal may bring outside property into court. The fund in controversy was already in court in the very cause in which all the contestants were appearing.

The decree is reversed, and the cause is remanded, with the direction to award the fund to appellant.