**Nora Redington, Appellee, v. Charles C. Craig et al., Appellant.**

**Gen. No. 8,545.**

164

Opinion filed February 23, 1933. Rehearing denied May 2, 1933.

ALVAH S. GREEN and I. N. HERREID, for appellant; C. C. CRAIG, *pro se*, of counsel.

WOOLSEY, STICKNEY & LUCAS, for appellee.

MR. JUSTICE BALDWIN delivered the opinion of the court.

The bill of complaint herein was filed December 14, 1931, in the circuit court of Knox county, Illinois, to foreclose a mortgage securing a note for the principal sum of $25,000 in favor of the complainant (appellee) against the defendant (appellant), said mortgage bearing date January 3, 1930, payable two years after date, with six per cent interest payable semiannually.

This mortgage contained various covenants. Among others, it contained the following covenant: "Upon the filing of any bill, answer, cross bill or intervening petition to foreclose this mortgage or collect the indebtedness secured thereby, the court may appoint any proper person receiver with power to collect the rents, issues and profits arising out of the premises during the pendency of such suit or proceeding and until the time to redeem the same from any sale that may be made under any decree therein shall expire, such rents, issues and profits, when collected, to be applied on the indebtedness and costs herein mentioned and described."

The cause was referred to the master in chancery of said court, who received the evidence and filed his report finding that default had been made in the payment of the said indebtedness so secured by the said mortgage and that there was due to the complainant from the defendant the sum of $27,554.75. Objections to said report were overruled and a decree entered thereon by the terms of which the defendant was ordered to pay within 10 days the sum of $27,554.75, together with the sum of $1,150 for complainant's sol-

icitor's fee and interest from March 15, 1932, together with the costs of suit.

It was further ordered that, in default of such payment, the real estate be sold by the master in chancery, upon the terms and conditions set forth in said decree.

Default having been made in the payment of such moneys, the master proceeded to sell the real estate in accordance with the terms of the decree for the total sum of $26,800. After the payment of the costs and expenses of such sale a deficiency in the sum of $2,443.47 remained and the court entered its deficiency decree therefor.

Thereafter, the complainant filed her petition for the appointment of a receiver to take charge and possession of the said premises and collect the rents thereof.

In the petition for such receiver the petitioner alleged the filing of her bill to foreclose her mortgage; the entry of the decree thereon; the amount found to be due to the complainant; the failure of the defendant to make payment; the sale of the premises by the master in chancery; the amount for which the sale was made and the amount of the deficiency which remained due to the petitioner.

The petitioner further alleged that the said defendant had no other property out of which the complainant could recover any of said deficiency and that there were judgments of record in the circuit court of Knox county, Illinois, against the said defendant, Charles C. Craig, totaling the sum of $180,000, all of which were unsatisfied and unreleased of record; that execution issued to the sheriff on judgments totaling at least the sum of $113,000 had been returned unsatisfied, and prayed the appointment of a receiver to take possession of the premises and collect the rents, issues and profits thereof until the time to redeem the same from any sale should expire and prayed that the rents be applied upon the indebtedness and costs of this pro-

ceeding and set forth that the gross rents would probably amount to the sum of $165 per month.

This petition was signed by the complainant and supported by her affidavit in which she stated that she had read the petition and "that she knows and understands the contents thereof and knows that the matters therein contained were wholly true."

The defendant was notified of the filing of the petition for receiver and of the hearing thereon and upon such hearing both he and his solicitor were personally present in court.

On May 6, 1932, which was the last day of the February Term of such court, a decree was entered appointing a receiver for the premises and such receiver qualified by filing his bond and entered upon his duties. The defendant excepted to the ruling of the court appointing such receiver and prayed an appeal to this court.

By the order appointing the receiver the court made its finding that default had been made in the payment of the mortgage indebtedness and that the terms of the mortgage provided for the appointment of a receiver, as above set forth; that the sale of the premises had been made in accordance with the former decree of court and that there remained a deficiency of $2,443.47 due the complainant, with interest thereon from April 21, 1932; that the defendant, Charles C. Craig, had no other property out of which the complainant could recover the deficiency and found that a receiver should be appointed to take possession of the property and entered its order appointing such receiver, prescribing his duties and fixing his bond.

The appellant on the last day of the term, without complying with the rule of court concerning the submission of bills of exception and certificates of evidence to opposing counsel for examination, presented to the trial judge a bill of exceptions and certificate of evidence which was then signed by the trial judge. On

July 5, 1932, during the June Term 1932 and within the period fixed for the filing of a bill of exceptions the complainant filed her motion in the trial court to amend the record and the certificate of evidence which had been so signed and filed on May 6, 1932, setting forth that such record and certificate of evidence did not fairly and accurately state the facts or truly represent what actually transpired at and in connection with the hearing in said court on the petition of the said complainant and petition for the appointment of a receiver in the said cause, and to insert in the original record the recital of such facts as actually occurred in connection with such petition.

Notice of the filing of such motion was given defendant and his solicitors on July 5, 1932, notifying each of them that on the 7th day of July, 1932, at 10 o'clock the complainant would appear before the trial judge in said circuit court in the circuit court room in the courthouse in Galesburg and move the court to amend the record and certificate of evidence as indicated.

On July 7, the defendant and his solicitors were present in court and by agreement of the parties the hearing on the motion was continued to July 11 when the matter was heard and again further taken up on July 13, 1932. On July 15, 1932, the trial court allowed the motion to amend the record and certificate of evidence and entered a corrected decree and certificate and this action is assigned as error by appellant, who filed his motion in this court to strike from the record such amended matter therein, not that the facts incorporated were incorrect, but because it is alleged that the court was without power to amend the decree after the term at which it was entered.

In the case of *Church v. English*, 81 Ill. 442, upon a similar question the court said: ''That a court has power to amend its own records at a subsequent term upon notice to parties adversely interested is not doubted. . . . As between the original parties, we

are not aware of any limitation as to the time in which such amendments may be allowed. No reason suggests itself why such amendments may not be made at any time, so long as anything definite and certain remains to amend by." The amendment in that case took place some ten years after the order had been made.

In the case of *Sinnock v. Marney,* 250 Ill. App. 266, 271, the court held: ". . . The court may at any time thereafter (after judgment) by an order entered *nunc pro tunc,* cause the record to show in proper, technical form the judgment that was, in fact, rendered by the court." Again, on page 275, following the case of *Davenport v. Kirkland,* 156 Ill. 169, it was said: "The first contention made on behalf of the appellant is, that the court had no power, after the term at which the decree was entered had elapsed, to amend the decree by correcting the name of one of the parties therein mentioned. The rule applicable to amendments or alterations of decrees in chancery after the lapse of the term is substantially the same as that prevailing in cases of judgments at law, and is confined to mere clerical errors or matters of form, or to matters which are quite of course. But this rule, as applied both to judgments at law and to decrees in chancery, does not deprive courts of the power, at a subsequent term, to correct matters of mere form in their judgments." Continuing the court said: "In *Cooley v. Scarlett,* 38 Ill. 316, it was held that where a circuit judge had inadvertently signed a decree containing erroneous recitals of proof, he might correct it at a subsequent term, on his becoming satisfied that an error in that respect had been committed." To like effect are the cases of *Palmer v. Harris,* 100 Ill. 276, and *People v. Holmes,* 312 Ill. 284.

It is thus apparent that the court possessed ample power to amend its record, certificate of evidence and decree in this case so that they and each of them should

correctly set forth such facts and transactions as actually took place and, therefore, the contention of the appellant in this respect cannot be sustained and the motion to strike must be and is overruled.

The only controversy in this case relates to the appointment of the receiver. It is urged by appellant that the trial court erred in appointing a receiver because it is said (1) the receiver was appointed after final decree of foreclosure without evidence to support the allegations of the petition; (2) the petition was not properly verified; (3) the complainant was not entitled to a receiver under the terms of the mortgage which had been foreclosed; (4) any rights the complainant had, had been merged in a final decree of foreclosure and sale without reserving by the decree the matter of rents for further consideration.

We assume that by his reference to a final decree of foreclosure appellant really means the deficiency decree. The decree of foreclosure is entered before any sale is made and such decree is the final decree of foreclosure. No other decree of foreclosure is entered. The only additional decree is a decree approving the sale and for a deficiency, if one exists, but such decree is in no sense a final decree of foreclosure. Hence, for the purpose of this case we have concluded that appellant has intended to refer to the deficiency decree when he used the term "final decree of foreclosure."

A receiver has been defined to be "an indifferent person between the parties to a cause, appointed by the court to receive and preserve the property or fund in litigation." High on Receivers, Section 1, chapter 1. (*Nartzik v. Ehman,* 191 Ill. App. 71.)

The power to appoint a receiver in any case, however, is a power possessed and exercised by courts of chancery as a part of the general preventive jurisdiction. It is a remedy to be applied by such court whenever in its judgment the exercise of such power is necessary to prevent injury and to do complete justice,

In the case of *Chicago Title & Trust Co. v. Mack*, 347 Ill. 480, 483, the court said: "The appointment of a receiver is a branch of equity jurisdiction not dependent upon any statute and rests largely in the discretion of the appointing court. It had its origin in the English court of chancery at an early date, and it was incidental to and in aid of the jurisdiction of equity to enable it to accomplish, as far as practicable, complete justice among the parties before it, the object being to secure and preserve the property or thing in controversy for the benefit of all concerned pending the litigation, so that it might be subjected to such order or decree as the court might make or render. In this State, as well as in most, if not all, the other States of the Union, the court may appoint a receiver in foreclosure proceedings, even when the mortgage does not by express words give a lien upon the income derived from the mortgaged property, to take charge of it and collect the rents, issues and profits arising from it, and if the mortgage expressly waives the right of possession of the mortgaged premises and consents to the appointment of a receiver during the pendency of a suit to obtain a decree of sale the effect is to pledge the rents as fully as the property itself, and a court of equity may appoint a receiver without regard to the solvency of the mortgagor. (*Haas v. Chicago Building Society*, 89 Ill. 498; *Bagley v. Illinois Trust and Savings Bank*, 199 Ill. 76.)"

But appellant says such appointment was made without evidence to support the allegations of the petition. The term "evidence" as defined by Blackstone "signifies that which makes clear or ascertains the truth of the very fact or point in issue, either on the one side or the other." In this case not only the sworn undenied petition, but all the records, decrees, minutes and proceedings of the case, were before the court and we find that the appellant expressly stipulated (the necessity of which we do not pass upon) that all such

records and files in the case should be considered by the court.

It is urged that the petition of the complainant was not properly verified. There is no merit to this contention. The affidavit attached to such petition not only recited that the affiant was the complainant but recited that she had read the petition, knew the contents thereof and that she knew they were true and such affidavit is sufficient. We know of no way it could be made any stronger since we cannot conceive how any person could say certain facts were true unless such person knew the facts were in fact true and the mere fact that complainant in her affidavit said she knew they were true neither adds to nor detracts from the affidavit. The cases cited by appellant as supporting his objection are cases where affidavits are made upon information and belief and have no application here.

The power to appoint a receiver is, as has been above mentioned, a power inherent in the court of equity and is an appropriate remedy to be applied by such court whenever in the discretion of such court such remedy is necessary to promote justice between the parties.

The fact that litigants may take a different view from that adopted by the court as to the necessity of a receiver is not impressive since it is incumbent upon the court to make the ultimate decision and to act for the preservation of the rights of the respective parties.

In this case, however, the appellant is not in a position to make complaint that his views did not coincide with the court as to the appointment of a receiver, for the reason that prior to such appointment a decree of foreclosure had been entered and by the terms of such decree it was found that the appellant was in default in the payment of the obligation and interest thereon and in the payment of certain taxes and special assessments which by the terms of the mortgage he had

agreed to pay. It was provided that "in case default be made in the payment of the principal indebtedness therein mentioned or any part thereof, with interest thereon, or a breach of any of the covenants or agreements therein contained, said mortgage might be foreclosed to pay the same . . . and that upon foreclosure of said mortgage to collect the indebtedness secured thereby, the court may appoint any proper person the receiver, with power to collect the rents, issues and profits arising out of the premises during the pendency of such suit or proceeding and until the time to redeem the same from any sale that might be made under any decree shall expire, such rents, issues and profits, when collected, to be applied upon the indebtedness and costs mentioned and described in said mortgage." Although the court is not bound to make the appointment of the receiver, yet when the circumstances are such as to appeal to the conscience of the court and to warrant the belief of the court that a receiver is necessary, the mortgagor cannot be permitted to repudiate the terms of his contract.

It is said by the appellant that the lien created by the mortgage is no longer effective after decree of foreclosure and in support of this proposition the appellant cited the cases of *Davis v. Dale,* 150 Ill. 239; *Digby v. National Loan and Building Ass'n,* 60 Ill. App. 644; *Schaeppi v. Bartholomae,* 217 Ill. 105. We have examined these cases, however, and we find that they do not support the position of the appellant.

In the *Davis v. Dale* case, the court said that the only question there involved was whether the circuit court had erred in requiring a receiver to pay taxes. In that case there had been a foreclosure but prior to the foreclosure proceeding a receiver had been appointed. Upon the sale under the foreclosure the premises produced the full amount of the debt, interest and costs. Sometime thereafter a motion was made to discharge the receiver but apparently no hear-

ing was ever had upon such motion and no orders entered thereon. The receiver was ordered to pay certain taxes and this was alleged as error and it was from this order that the appeal was prosecuted. In passing upon the question the court used some of the language relied upon by the appellant, namely: "By virtue of the lien created the mortgagee or *cestui que trust* had the right to have the security foreclosed and the property sold and the proceeds applied in payment of the secured debt. But when this has been done and the lien enforced by a sale of the property and the proceeds applied, the mortgage or trust deed has expended its force." This language was perfectly correct in the case in which it was used, because the sale of the security had produced the full amount of the debt, interest and costs and nothing further remained due to the plaintiff. In the case at bar, however, there remained a deficiency judgment in excess of $2,400.

In the *Digby v. Loan Ass'n* case, a different situation was presented. Upon the foreclosure, the sale produced the full amount of the debt, interest and costs and the mortgagor demanded the return of certain other collateral (insurance policies) which had been given in addition to the mortgage and the court said: "The policies of insurance were collateral security to the debt. When the debt was paid in full, as it was by the sale of the mortgaged premises, for the full amount of the debt and costs, the collateral again belonged to the debtor and should have been returned to him." It is to be noticed that the sale of the real estate produced the full amount of the debt, interest and costs, so that the case is no authority for the position taken by the appellant.

In the case of *Schaeppi v. Bartholomae*, 217 Ill. 105, there was a mortgage foreclosure and upon sale there was a deficiency. The court appointed a receiver to collect the rents during the redemption period and

apply them on the deficiency. The mortgage in that case, however, contained a provision that after sale the rents should belong to the purchaser and the court held, in passing upon the question, that the purchaser was not entitled to the rents notwithstanding such provision in the mortgage; that the only thing the purchaser could receive was such rights as were conferred upon him by statute.

Again, it is said by the appellant that the mortgagee could not claim the rents and profits and in support of this position he cites the case of *Longley v. Wilk,* 171 Ill. App. 419. We see no analogy whatever between such case and the case at bar. The court in that case held that the provisions of the particular trust deed did not pledge or create a lien upon the rents, issues and profits collected after foreclosure sale and before the expiration of the period of redemption. It is also to be noted that the mortgagor was not the owner of the equity of redemption, he having disposed of same at some time prior thereto and there was no deficiency against the person who did own the equity of redemption.

This question, however, is not new in this State. In the case of *First Nat. Bank of Joliet v. Illinois Steel Co.,* 174 Ill. 140, page 151, the court, quoting with approval the language of *Haas v. Chicago Building Society,* 89 Ill. 498, said: ''The necessity for the appropriation of the rents to the payment of the mortgage debt may frequently not appear until after both decree and sale. The amount due is often matter of dispute, and can only be determined by the decree, and what the property will sell for can only be ascertained with certainty from the result of the judicial sale. If an appropriation of the rents on the indebtedness is justified by the surrounding facts before sale, we see no good reason why the same and more weighty facts existing after sale may not warrant a similar procedure. The security, plainly, is not exhausted by

the sale, for there is a fund included in it which is secondarily liable. It is true, the mortgagee has elected to foreclose and sell; but then he has pursued that remedy to the end and without getting satisfaction of his debt, and he may avail himself of any just and equitable means of collecting the residue,—not that he may have such extraordinary remedy in all cases of a deficit in the proceeds, but only where it is indispensably necessary for his protection, and just and equitable. We hold, then, both upon the principles of equity that lie at the foundation of the chancery court, and upon authority, a receiver may sometimes be allowed after decree and sale, and that a mortgagee does not, in all cases, exhaust his security by a foreclosure and sale. It is, however, a power that the chancellor will be slow to exercise except in an extreme case, and to prevent palpable wrong and injustice.'' And quoting further from page 153, the court said: ''The question involved in this case, to-wit, where the property sold does not pay the mortgage debt, and where the mortgage has a provision that the rents and profits may be applied toward the payment of the indebtedness and costs, was not before the court. . . . Here the receiver was properly appointed after the foreclosure decree and sale, as the security of the steel company was not exhausted by the sale. Moreover, the necessity for the appointment of a receiver and the collection of the rents and profits, and their application to the payment of the deficiency, did not appear until after the foreclosure decree and sale.''

In *Bagley v. Illinois Trust and Savings Bank*, 199 Ill. 76, on page 78, the court in passing upon a similar question said: ''We are unable to discover any error in the decree appointing the receiver. By the express provisions of the deed of trust the mortgagors waived their right to retain possession after any default in payment or after breach of any of the covenants in the deed. It also provided that the legal

holders of the notes might file a bill in any court having jurisdiction, to obtain a decree for the sale of the property, and that the court might appoint a receiver to collect the rents during the pendency of the suit. Nothing more has been done than the parties stipulated for in their deed. The effect of the deed was to pledge the rents for the payment of the debt as fully as the property itself, and to make the pledge effectual the appointment of a receiver to collect them was stipulated for. Such a provision in the mortgage created a valid lien on the rents, which equity will enforce without regard to the question of insolvency of the mortgagors. (*First Nat. Bank of Joliet v. Illinois Steel Co.*, 174 Ill. 140; *American Bridge Co. v. Heidlebach*, 94 U. S. 798; *Freedman's Saving and Trust Co. v. Shepherd*, 127 id. 494; 1 Jones on Mortgages [5th ed.] sec. 771.)

"It is not meant, however, to be said that a court of equity will appoint a receiver simply because such appointment is stipulated for in the mortgage. The court is not bound to enforce such a provision where it is not necessary to enforce the lien on the rents and profits for the payment of the mortgage debt. But it has been held that such an agreement in the mortgage is entitled to weight in determining whether the power of the court to make the appointment should be exercised or not. (*Keogh Mfg. Co. v. Whiston*, 14 N. Y. S. 344.)"

In paragraph 55 of chapter 22 of Cahill's Illinois Revised Statutes (1931) it is provided: "That before any receiver shall be appointed the party making the application shall give bond to the adverse party in such penalty as the court or judge may order and with security to be approved by the court or judge, conditioned to pay all damages, including reasonable attorneys' fees sustained by reason of the appointment and acts of such receiver, in case the appointment of such receiver is revoked or set aside; pro-

vided, that bond need not be required, when for good cause shown, and upon notice and full hearing, the court is of opinion that a receiver ought to be appointed without such bond.'' It is urged that the appointment of the receiver herein cannot be sustained because it is said the specific reason of the court for appointing the receiver without bond is not recited in the order as required by this statute.

In *Central Trust Co. v. McGurn,* 257 Ill. App. 45, on page 48, the court said: ''The defendant contends that the court was without power to appoint a receiver without first requiring the complainant to give a bond, unless the giving of such bond was dispensed with in the order of appointment as required by paragraph 55, chapter 22, Cahill's Statutes, and that since the order appointing a receiver did not provide that no bond need be given by the complainant, the order is erroneous and should be reversed. . . .

''It is conceded by complainant, as indeed it must be, that an order appointing a receiver must comply with the provisions of the statute. The order entered on December 19, appointing a receiver, states that the matter for the appointment of a receiver was heard on the verified bill of complaint, and that due notice of the application for the appointment was given to the defendant, McGurn, the owner of the mortgaged premises. . . . But no mention is made in the order that a bond need not be filed by the complainant as required by the statute. Obviously the order was erroneous in failing to comply with the statute, and there is no contention to the contrary. But counsel for complainant contend that the error in the order was remedied by the order entered December 31, which the court ordered entered *nunc pro tunc* as of December 19.

''The record discloses that on December 31, the court entered an order which recites that the matter came on for hearing on motion of solicitors for com-

plainant for the entry of an order amending the order of December 19, appointing the receiver, and it was ordered and adjudged that the order of December 19 be amended by inserting in an appropriate place the following: 'And upon notice and full hearing, the court being of the opinion that the filing by the complainant of a bond to the adverse party need not be required, for good cause shown, and that a receiver ought to be appointed without the filing of such bond.' And by inserting a further provision that the receiver be appointed without giving bond . . . , etc.

"What such an order should contain has been the subject of consideration in a great many cases, some of which are: *Walker v. Kersten,* 115 Ill. App. 130; *Watson v. Cudney,* 144 Ill. App. 624; *Sherman Park State Bank 'v. Loop Office Bldg. Corp.,* 238 Ill. App. 450; *Chicago Title & Trust Co. v. Bickley,* 255 Ill. App. 45; *Mason v. Hooper,* 166 Ill. App. 537.

"In the Walker case, after the sale of the premises, under a foreclosure decree, there was a deficiency and a receiver was appointed. Upon appeal to this court one of the contentions urged for reversal was that the order appointing the receiver did not require the complainant to give bond and no cause was shown why bond should not be required and that this was contrary to section 1 of the statute in question. In passing on this question . . . the court said: 'In this we think the court erred. But the error was not harmful. The statute provides that the complainant shall give a bond to the adverse party conditioned to pay all damages, etc., "in case the appointment of such receiver is revoked or set aside." The case was a proper one for the appointment of a receiver. The order appointing a receiver, therefore, will not be set aside or revoked, and there could be no recovery by appellant on the bond if one had been given.' In that case, it will be noted that, although the statute had not

been complied with in any particular, yet the order appointing the receiver was affirmed because it affirmatively appeared that the case was a proper one for a receiver and therefore there could be no liability because the purpose of the statute, as expressly stated by the legislature, was to require the party making the application to give bond to the adverse party conditioned to pay the adverse party all damages, including reasonable attorney's fees sustained by reason of the appointment, if it developed that the appointment should not have been made. It would have been an idle and useless ceremony to reverse the order because it was not in accordance with the statute where no purpose would be served by doing so. The law never requires the doing of a useless act. To the same effect is *Bothman v. Lindstrom,* 221 Ill. App. 262.''

In the same case, on page 54, it was said by the court: ''Upon a careful consideration of all the authorities passing on this statute, we have reached the conclusion that the whole record may be examined to determine whether a bond should be required of the complainant, and that it is not necessary that the order appointing the receiver contain the facts which, in the opinion of the court, excuse the giving of the bond. But we think the order appointing the receiver ought to show, as the statute requires, that for good cause shown upon notice and full hearing the court was of the opinion that a receiver ought to be appointed without complainant being required to give bond.''

We hold that the order appointing the receiver herein contained the necessary elements to comply with the statute mentioned and finding no error in the record the decree of the circuit court appointing such receiver should be sustained.

The judgment of the circuit court of Knox county is affirmed.

*Affirmed.*