**Frederick Bothman v. Enock W. Lindstrom et al.**

**John C. Wilson, Intervening Petitioner, Appellee, v. Appeal of Oliver O. Miksch, Receiver, Appellant.**

**Gen. No. 25,759.**

1. APPEAL AND ERROR—*right of receiver to appeal.* Where, in a contest to determine the right to funds remaining in the hands of a receiver appointed in a foreclosure suit, an order has been entered charging the receiver with certain sums paid out by him for taxes and special assessments so that he is personally involved, he has a right to appeal.

2. RECEIVERS—*right to rely on order of court in making payments.* A receiver is subject to the orders of the court and if all parties are properly notified of the application for the order and he is directed to make payments and no question is raised that such payments are improper, he can rely on the order of the court.

3. RECEIVERS—*authority under order of court for payment of taxes.* An order to the receiver in foreclosure proceedings entered August 7, 1917, authorizing and directing him to pay current taxes

and special assessments due on the property and to redeem from a certain tax sale, did not authorize him to make further payment of taxes and special assessments due in 1918.

4. RECEIVERS—*what payments improperly made after foreclosure sale.* A receiver in foreclosure has no authority to pay out of the rents and profits, after foreclosure sale, taxes and special assessments though they became liens on the property before such sale, and he is properly charged with payments so made.

5. MORTGAGES—*when rents and profits improperly awarded to holder of equity of redemption as against deficiency decree.* Where the mortgagors continued to own the equity of redemption more than eight months after a deficiency decree was entered against them, they could not divest themselves of their equity so as to give to another party greater rights than they themselves had, and it was error for the chancellor to award to such a holder of the equity the rents and profits remaining in the hands of the receiver before payment of the deficiency decree.

6. RECEIVERS—*when appointment not invalid for failure to give bond.* Where, so far as the record discloses, no objection was made when a receiver was appointed in foreclosure proceedings nor any motion ever made to discharge him because of failure to furnish the bond required by Act of May 15, 1903, J. & A. ¶¶ 2743, 2744, and money is in his hands to be disposed of, his appointment cannot be held void because of such failure.

Appeal from the Circuit Court of Cook county; the Hon. MERRITT W. PINCKNEY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1919. Reversed and remanded with directions. Opinion filed June 18, 1921. Rehearing denied and opinion modified July 1, 1921.

ALFRED W. BAYS, for appellant.

THOMPSON, TYRRELL & CHAMBERS, for appellee Frederick Bothman.

WEST & ECKHART, for appellee John C. Wilson.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

The question involved in this case is: Who is entitled to funds in the hands of a receiver appointed in a foreclosure suit, the holder of a deficiency decree

or the owner of the equity of redemption, the latter having purchased the mortgagor's interest in the premises and having taken an assignment of the rents in the hands of the receiver several months after the deficiency decree was entered?

So far as it is material to state them the facts are these: May 9, 1917, the owners of the mortgage indebtedness filed their bill for foreclosure and on June 7 following a receiver was appointed. Two months later, August 7, the receiver filed a verified petition setting up, inter alia, that on December 8, 1916, the property was sold for taxes; that the general taxes for the year 1916 payable on or before May 1, 1917, amounting to $354.56, and the second instalment of a special assessment, $56.59, payable May 1, 1917, were unpaid and leave of court was asked to redeem from the tax sale and to pay the taxes and the instalment of the special assessment, together with other sums not necessary to be considered here. Notice of this was given to all the parties in interest, including the mortgagors, and on the same day, August 7, 1917, an order was entered authorizing and directing the receiver "to pay current taxes and special assessments due on said property and redeem the same from tax sale of December 8, 1916, as soon as sufficient funds are in the hands of said receiver to enable him to pay said taxes and make said redemptions." The receiver redeemed from the tax sale, paid the general taxes for 1916 and the second instalment of the special assessment mentioned. There is no controversy about the payment of these sums. A decree of foreclosure was entered November 22, 1917. The indebtedness not having been paid, the decree provided that the property be sold, which was accordingly done, and on December 31, 1917, a deficiency decree of $1,000 was entered against the mortgagors. Sometime during April, 1918, the receiver paid the general taxes for 1917, amounting to $344.54, and the third instalment

of the special assessment, $63.55. On September 18, 1918, Wilson, as trustee, purchased the equity of redemption from the mortgagors and he, as an individual, took an assignment of rents from them. On December 19, 1918, Wilson claimed these rents. The receiver filed his final report on April 1, 1919, showing that he had on hand $926.16. The contest arose as to the ownership of the funds in the hands of the receiver, and after issue on that question was made up an order was entered charging the receiver with the $344.54 and the $63.55 paid in April, 1918, for the general taxes of 1917 and the third instalment of the special assessment, and this amount, $408.09, together with the balance which the receiver reported on hand, viz., $926.16, aggregating $1,334.25, was ordered turned over to John C. Wilson, trustee, he being the then owner of the equity of redemption and of the rents. The receiver and the mortgagee both appealed to this court.

A preliminary question is raised as to whether the receiver, under the circumstances, had a right to appeal. As a general proposition a receiver has no right to appeal as he is merely an arm of the court, but where he is personally involved, as in the instant case, we think the matter is properly before us on his appeal and of course the mortgagee had a right to appeal.

It is contended on behalf of the receiver that the court erred in refusing to give him credit for the general taxes for 1917 and for the third instalment of the special assessment, both paid by him in April, 1918, and in support of this it is argued that this payment was authorized by the order of court of August 7, 1917, from which we have quoted. Of course, it is the law that a receiver, who is an officer of the court, is subject to its orders, and if all parties are properly notified of the application for the order and the receiver is directed to make payments, and no question

is raised by any one in interest that such payments are improper, the receiver can rely upon the order of court. He must obey the order of court and obviously should not be penalized in these circumstances. *Reardon v. Youngquist,* 189 Ill. App. 3. But we think it also clear that the order entered was not sufficiently specific to authorize payment of the taxes and the instalment of the special assessment in 1918. We are of the opinion, upon an examination of the petition filed by the receiver and the order of court, that these payments were not in contemplation of the court when the order was entered, so that the receiver cannot rely upon such order. But counsel for the receiver argue that even if no order was entered, yet the payment was proper because the taxes and the special assessment were liens on the property prior to the foreclosure decree and in these circumstances the expenditures should have been allowed. In support of this the case of *Atwood v. Knowlson,* 91 Ill. App. 265, is cited. We think that case sustains counsel's contention. It was there held that where taxes had become a lien upon the mortgaged property before the decree of sale in a forecloseure suit they might be properly paid by the receiver. No authorities are cited in the *Atwood* case and we are of the opinion that the law in this State is that the purchaser at a foreclosure sale is entitled to all the right, title and interest of the mortgagor in the premises and no more, and takes the property charged with all of the infirmities of title. *Davis v. Dale,* 150 Ill. 239. In that case the property was sold under a foreclosure decree December 21, 1891, for the full amount of the indebtedness. The trust deed provided that the mortgagors should pay all taxes and assessments and not suffer the property to be sold for nonpayment; that if there was any such default the trustee, or other person interested, might pay them. There the receiver collected moneys after the sale and took credit for $1,574.80, which he had

paid for taxes upon the property for the year 1891. The court there said (p. 244): "No cross errors are assigned, nor is the correctness of the decree in respect of the payment of taxes of 1891 in any way questioned. It is difficult to see how the purchaser at the master's sale would, in the condition of this case, be entitled to payment of such taxes out of the rents and profits. But, as before said, the question is not raised, and need not be now determined." In that case the facts are substantially the same as in the instant case, and there is a clear intimation that these taxes were improperly paid. In *Stevens v. Hadfield,* 90 Ill. App. 405, it was said: "The purchaser at the foreclosure sale took the title with all its infirmities and burdens, and it was not for the receiver to apply the rents and profits accruing during the period of redemption to the removing of such infirmities or burdens for the benefit of such purchaser." Citing *Davis v. Dale,* supra, and *Stevens v. Hadfield,* 178 Ill. 532. In the *Stevens* case (90 Ill. App. 405), it was further said (p. 407): "The same reasons which preclude the receiver from assisting the purchaser at the forclosure sale by an application of the rents and profits accruing during the period of redemption upon the first mortgage lien, also preclude him from assisting here in the matter of taxes. This item was also properly disallowed." We think the court properly held that the receiver should not be allowed credit for these two items.

The chief point of controversy in this case, however, is whether Wilson, either individually or as trustee, was entitled to the $1,334.25 in the hands of the receiver, or whether the deficiency decree should first be paid out of these rents. This question is not at all free from difficulty. A great deal has been said in the opinions of different divisions of this court in discussing whether rents which accrued during the period of redemption should go to the owner of the equity or

the holder of the deficiency decree. And from an examination of these cases it appears that the decisions primarily turned on the provisions contained in the several trust deeds involved, and particularly as to whether the rents had been pledged as security for the indebtedness. See *Stevens v. Pearson,* 202 Ill. App. 22, and *Baldwin v. Tuttle,* 215 Ill. App. 57. Of course, all of the authorities hold that as a general proposition rents accruing during the period of redemption belong to the owner of the equity of redemption. In the *Pearson* case it was held that the trust deed sought to give the rents that accrued during the period of redemption to the purchaser at the sale and this provision was held inoperative, which holding is in accordance with a number of decisions of our Supreme Court. *Schaeppi v. Bartholomne,* 217 Ill. 105. In the *Pearson* case there was a deficiency decree against the mortgagors. They conveyed their equity to Cagney, the appellee, but whether this conveyance was made before or after the deficiency decree does not appear, and the question in that case seemed to turn upon the provisions of the trust deed. In the *Baldwin* case the mortgagors, after the execution of the mortgage and before the foreclosure suit was instituted, conveyed their equity in the premises to Stella Wood subject to the incumbrance which Wood did not assume or agree to pay. In the instant case, the record discloses that the deficiency decree was entered against the mortgagors December 31, 1917, and Wilson did not become the owner of their equity in the property until more than eight months thereafter, viz., September 18, 1918.

The Supreme Court of this State has held that in a foreclosure suit a receiver may be appointed to collect the rents during the period of redemption and apply the same on a deficiency decree although the rents were not pledged by the trust deed. *Prussing v. Lancaster,* 234 Ill. 462. The court there said (p. 467): "It is also contended, if it were conceded that

said trust deed was a valid lien on the premises covered thereby, that the court erred in continuing the receivership after the approval of the master's sale under the foreclosure decree and in directing that the rent collected by the receiver during the period of redemption be applied in payment of the deficiency decree. The premises did not sell for enough to satisfy the foreclosure decree, and there was a deficiency decree for $5,598.44 in favor of appellees. In such case the practice is a proper one to apply to the satisfaction of such deficiency decree, through a receiver, the rents which may accrue upon the premises covered by the trust deed during the redemption period; and this may be done by a court of equity, although the trust deed is silent upon the subject of the application of the rents to the payment of any deficiency that may remain after the sale of the land covered by the trust deed. *Haas v. Chicago Building Society,* 89 Ill. 498; *First Nat. Bank of Joliet v. Illinois Steel Co.,* 174 Ill. 140." In the *First Nat. Bank* case the court said (p. 149): "That a court of equity has power to appoint a receiver and grant equitable relief where there are no express words in the mortgage giving a lien on the rents and profits derived from the property, is conceded. In such a case, whether relief will be granted is dependent upon the facts and circumstances at the time the application is made. This court said in *Haas v. Chicago Building Society,* 89 Ill. 498 (at p. 502): 'We find the decided weight of American authority to be in favor of the proposition that a court may, even when the mortgage does not by express words give a lien upon the income derived from such property, appoint a receiver to take charge of it and collect the rents, issues and profits arising therefrom. Such action will not be taken, however, unless it is made to appear the mortgaged premises are an insufficient security for the debt, and the person liable personally for the debt is solvent, or at least of very

questionable responsibility.' '' To the same effect is *Grant v. Phœnix Mut. Life Ins. Co.,* 121 U. S. 105, where the court quoted with approval from the case of *Omaha Hotel Co. v. Kountze,* 107 U. S. 378, as follows: '' 'Courts of equity always have the power, where the debtor is insolvent, and the mortgaged property is an insufficient security for the debt, and there is good cause to believe that it will be wasted or deteriorated in the hands of the mortgagor,   *   *   * to take charge of the property by means of a receiver, and preserve not only the *corpus,* but the rents and profits, for the satisfaction of the debt.' '' And indeed it has been held that even where the trust deed expressly pledges the rents as security for the debt and authorizes the appointment of a receiver, the court will not make such appointment where it would be inequitable to do so. *Bagley v. Illinois Trust & Savings Bank,* 199 Ill. 76. And in the case of *Aetna Life Ins. Co. v. Broeker,* 166 Ind. 576, it was held that the provision in a trust deed authorizing the appointment of a receiver to collect the rents would not be enforced in a court of chancery except where the equities of the case required that it be done. In the *Bagley* case the court said (p. 79): ''The court is not bound to enforce such a provision where it is not necessary to enforce the lien on the rents and profits for the payment of the mortgage debt. But it has been held that such an agreement in the mortgage is entitled to weight in determining whether the power of the court to make the appointment should be exercised or not.'' From a consideration of the authorities we are clear that upon an application for the appointment of a receiver in a foreclosure proceeding, a provision of the trust deed pledging the rents and authorizing the appointment of a receiver is not of controlling force, but that a court of chancery will appoint or refuse to appoint a receiver as may be proper upon a consideration of all the equities of the

case. And the same is true where the trust deed is silent on the subject. In the instant case, even if we assume that there was no express pledging of the rents as additional security for the indebtedness, yet we think a court of equity might grant the mortgagee equitable relief by appointing a receiver since it appeared that there was a deficiency decree against the mortgagors, the then owners of the equity of redemption. For it appears that more then eight months after the deficiency decree was entered against the mortgagors, who were also the owners of the equity, they made no attempt to pay this deficiency and have the receiver discharged, and we think this indicated that they were ''at least of very questionable responsibility.'' It is not even contended here, nor do we think it could well be contended, that the mortgagors would be entitled to the rents during the period of redemption until they had paid the deficiency decree, and we think it obvious that any one to whom they might dispose of their equity of redemption would be in no better position. In the *Pearson* case the court, in discussing the *Schaeppi* case, said in its additional opinion: ''And while such clause did not pledge the rents and profits for the payment of the mortgage debt, nevertheless the record in that case (*Schaeppi*) discloses the fact that the original makers of the note and mortgage were also the owners of the equity of redemption and, therefore, personally liable for the debt, and hence the rents and profits were properly applied to satisfy the deficiency decree against them.'' See also *Owsley v. Neeves,* 179 Ill. App. 61.

But whether the distinction which we have pointed out in the *Pearson* and *Baldwin* cases makes any material difference between those cases and the case before us, we think the chancellor was in error in awarding the rents to Wilson, the then owner of the equity of redemption, until the deficiency decree was paid. It may well be that the owner of an equity of re-

demption, who purchases before foreclosure subject to the incumbrance, but which he does not assume or agree to pay, would be entitled to the rents during the period of redemption although there was a deficiency decree against the mortgagors if the rents had not been pledged as additional security and it did not appear that the mortgagors were unable to pay the deficiency. For in such circumstances there would appear to be no sound reason why the owner of the equity should pay the debt of the mortgagors before he could have the rents during the period of redemption. But in the instant case the mortgagors continued to own the equity of redemption more than eight months after the deficiency decree was entered against them, and we think it would be most inequitable to hold that they could divest themselves of their equity so as to give some other party greater rights than they themselves had.

It is also contended that the appointment of the receiver was void for the reason that the party making the application for the appointment failed to give a bond as required by the Act of May 15, 1903 (Laws of 1903, p. 290, J. & A. ¶¶ 2743, 2744). This point seems to have been made for the first time in this court. So far as the record discloses, no objection was made when the receiver was appointed, nor was any motion ever made to discharge him because of the failure to furnish such bond. The money is now in the hands of the receiver and must be disposed of as the court directs. We are, therefore, of the opinion that the contention cannot be maintained.

The order or decree of the circuit court of Cook county is reversed and the cause remanded, with directions to the receiver to first pay the deficiency decree and then turn over the balance in his hands to Wilson.

*Reversed and remanded with directions.*

TAYLOR, P. J., and THOMSON, J., concur.