EDWIN W. FINCH, as Executor, etc., of REUBEN T. WELLS, Deceased, Appellant, *v.* CLEMENT J. FLANAGAN, Individually, as Administrator of ALDA KNOX FLANAGAN, Deceased, and as General Guardian of MARY AGNES FLANAGAN and Another, Infants, and Others, Defendants, Impleaded with FRED RAY, Respondent.

Third Department, March 5, 1924.

Mortgages — foreclosure — receivership — agreement executed by cotenant and assignee of mortgages on farm providing for appointment of receiver not binding on subsequent purchaser of entire interest in farm — appointment of receiver who took possession of crops not justified under facts.

In an action to foreclose two mortgages upon a farm, it appeared that the farm was deeded to a man and his wife as tenants in common subject to a mortgage, and that thereafter the husband and wife executed a mortgage; that the wife died intestate leaving two infant children who took her half interest in the

farm subject to a tenancy by the curtesy in her husband; that the husband, while the title to one-half remained in his infant children, entered into an agreement with the assignee of the mortgages, providing for the appointment of a receiver in case of default and said agreement was recorded; that thereafter the farm was sold to the present owner, the respondent in this action, subject to the mortgages which the purchaser agreed to assume and pay, but there was no reference in the contract of sale or in the deed of the agreement relating to the appointment of a receiver; that the purchaser received a deed of the interest of the children in the farm; and that a receiver of the crops of the respondent was appointed under the agreement and he took possession thereof.

*Held,* that the agreement relating to the appointment of a receiver does not purport to bind the successors or grantees of the husband who executed it, but merely to bind his heirs, executors or administrators, and it is not binding upon the purchaser in respect to the interest which he acquired from the children, nor in respect to the interest which he acquired from the husband, and the fact that it was recorded does not make it binding on him, and, therefore, the usual proceedure for the appointment of a receiver in foreclosure should have been followed.

However, if the agreement became a part of the mortgage, still the court should not have appointed a receiver of the crops of the respondent, since the rents, profits or crops were not pledged to secure the mortgage debt and there was no proof whatever that the mortgage debt was not amply secured or that those personally liable for the deficiency were insolvent. The contention that the receiver was appointed to protect the interests of the infants is without foundation, since the infants at that time had no interest in the farm either direct or indirect. The fact that a small deficiency arose on the sale of the premises does not justify sustaining the order appointing a receiver, since the order was imprudently granted and its existence may have affected the price at the sale, which was far below the price that the respondent agreed to pay for the farm.

COCHRANE, P. J., and HINMAN, J., dissent, with opinion.

APPEAL by the plaintiff, Edwin W. Finch, as executor, etc., from an order of the Supreme Court, made at the St. Lawrence Special Term and entered in the office of the clerk of the county of St. Lawrence on the 25th day of October, 1923, vacating an order appointing a receiver in this action.

*Lawrence Russell,* for the appellant.

*Frank L. Cubley,* for the respondent.

VAN KIRK, J.:

The action is to foreclose two mortgages upon a farm in St. Lawrence county.

On February 20, 1913, this farm was deeded to C. J. Flanagan and his wife in equal shares as tenants in common, subject to a mortgage in the sum of $3,800. On the same day Flanagan and wife executed a bond in the sum of $4,000, and a mortgage on this farm to secure it. On December 9, 1918, these bonds and mortgages were assigned to Reuben T. Wells.

Mrs. Flanagan died intestate in 1917, leaving two infant children

and her husband surviving; her half interest in the farm passing to her children, subject to a tenancy by the curtesy in her husband. On December 24, 1918, while the title to one-half the farm remained in his infant children, Flanagan, as party of the first part, and Wells, as party of the second part, entered into a written agreement, which was duly recorded on that day in the clerk's office of St. Lawrence county. After some recitals this agreement states: " Now Therefore, in consideration of the sum of One Dollar paid * * * it is hereby understood and agreed between the parties hereto that the said mortgages hereinbefore mentioned and described shall, so far as the same affect the party of the first part hereto, be modified as follows: " Then follow the stipulations of the agreement, in the third of which is the following: " The party of the second part, his legal representatives or assigns, shall be at liberty immediately after any default in any of the conditions of said mortgages and the bonds accompanying the same, upon a complaint filed, * * * for the foreclosure of said mortgages, to apply for, and shall be entitled as a matter of right, and without regard to the value of the premises therein described, or the solvency or insolvency of the party of the first part, or of any owner of said premises, and without notice to the party of the first part, his heirs, executors or administrators, to the appointment by any competent court or tribunal of a receiver of the rents, issues and profits of said premises * * *." The agreement concludes: "As hereinabove modified the two certain mortgages shall stand with the same force and effect, so far as the parties hereto are concerned, as if originally made, executed and delivered in said modified form."

Flanagan sold the farm to the defendant Ray, and on April 20, 1921, deeded it to Ray, subject to these mortgages, which Ray agreed to assume and pay. On the same day Flanagan, as special guardian for his infant children in proceedings to sell infants real estate, delivered to Ray a deed of the interest of his children in the farm. Neither in the contract for this sale of the farm, nor in the deeds, was there mention of the agreement of December 24, 1918, for the appointment of a receiver. Ray paid $14,000 for the farm as follows: He assumed the two outstanding mortgages, gave a third mortgage in the sum of $2,200, and paid $4,000 in cash. He immediately entered into possession of the farm and equipped it with stock, tools and machinery and regularly thereafter worked it.

This action was begun in April, 1923, but the amended complaint was not served till after June 8, 1923. There was no appearance by any defendant, except by the infant defendants, the children of C. J. Flanagan, who was appointed their guardian *ad litem* on

July 12, 1923, the day the receiver was appointed. The referee was appointed, his report was made, a judgment of foreclosure and sale was procured, all on August 25, 1923, and the farm was sold October 20, 1923.

Defendant Ray says he employed an attorney to look after his interest in this foreclosure action, but the attorney did not appear and apparently entirely neglected his client. Ray was justified in supposing his attorney was caring for his interests. After the receiver had taken possession of Ray's crops, he employed another attorney, who, on the 13th day of October, 1923, procured an order to show cause and upon the return day of the order, at a Special Term of the Supreme Court, held October 22, 1923, the order appointing the receiver was vacated. We think this order vacating the receivership should be affirmed.

The foregoing agreement for the appointment of a receiver is by its terms an agreement between the parties thereto only. It does not purport to bind the successors or grantees of Flanagan. The waiver therein expressed is of " notice to the party of the first part, his heirs, executors or administrators; " not of notice to his grantees or successors. As modified the mortgages are to stand " so far as the parties hereto are concerned." Certainly this agreement would not effect a change, or insert a new condition, in the mortgages in respect to the interests of the children. The agreement being in that form it is of no moment that the agreement was recorded. As against the defendant Ray the stipulations of this agreement have no effect and the usual proceeding for the appointment of a receiver in foreclosure should have been followed.

If we are wrong in this construction of this agreement, and if the agreement became a part of the mortgage, still the court will not appoint a receiver when no reasonable ground therefor is shown. (*Thomas* v. *Davis*, 90 App. Div. 1; *Fletcher* v. *Krupp*, 35 id. 586, 588.) A receivership in foreclosure is an extraordinary remedy. A receiver is the agent of the court. His appointment is for the protection of the interest of a party but his possession and acts are those of the court. The court will not assume the duty and responsibility of a receivership upon the consent of, or for the accommodation of, a person. By such a receivership the court takes possession of a person's property before judgment and before a debt or an amount to be satisfied is determined; it subjects a person and his property to a considerable expense and deprives him of the use of his property without justification unless good cause therefor is shown. To justify the appointment of a receiver on the application of the mortgagee it must appear that the mortgaged premises are an inadequate security for the debt and that the

parties personally liable for the debt are insolvent. (*Burlingame v. Parce*, 12 Hun, 144, 148.) And a receiver may be appointed to protect the interest of the party only who applies therefor and not to protect the interest of some other party. (*Goodyear v. Betts*, 7 How. Pr. 187.)

In our view the special county judge was not justified in granting the order appointing the receiver. In neither mortgage being foreclosed are the rents, profits or crops pledged to secure the mortgage debt. There was no proof whatever, by affidavit or otherwise, that the mortgage debt to plaintiff was not amply secured, or that those who were personally liable for any deficiency that might occur were insolvent. C. J. Flanagan was one personally liable for such deficiency. The affidavit of Flanagan presented to the court, after setting forth the liens and incumbrances upon the farm, all of which were subsequent to these two mortgages, states that his two infant children are the owners of an equity in the premises and " that the mortgaged premises are, as he is informed and verily believes, inadequate security for the protection of the interests of said infants, without the appointment of a receiver of the rents and profits of said premises." This is the sole ground, further than the facts appearing in the ordinary complaint for foreclosure and the aforesaid agreement for the appointment of a receiver, presented to the court, on which it was asked to appoint a receiver. And this was no ground. The charge is not true. The facts are that, at the time, the infant children had no interest whatever in the farm, direct or indirect, and had not had since April 20, 1921; that the affidavit stating that the infants' equity was in jeopardy was made by C. J. Flanagan, their father, who as above stated was the special guardian who had executed and delivered the deed of their interest in the farm to Ray. Also it appeared that in April, 1921, Ray purchased this farm for $14,000. The amount due on the mortgages being foreclosed was but $6,800 of principal and a small amount of interest. This is a surprising fall in value of farm lands in two and one-half years and no cause therefor is even hinted. Also, if the infants had had some interest in the premises, inadequate protection of that interest was not a ground on which this plaintiff could ask the appointment of a receiver.

After the sale it appeared that there was a small deficiency and it is now claimed that, therefore, this order appointing the receiver should be sustained. To this we cannot consent. No one can now say to what extent the existence of the receivership affected the price at the sale so far below the selling price to Ray a short time before. There was no justification for the order. Under the order, imprudently granted, the receiver took summary possession

of all the crops upon defendant Ray's farm, which crops were Ray's personal property (*Stall* v. *Wilbur*, 77 N. Y. 158) and which in part he had in good faith put in after the foreclosure action was begun. An equity court cannot sustain an order under the circumstances disclosed here because of a result entirely unexpected when the order was made. A wrong was done when the defendant's property was taken over by the court and should as far as possible be corrected.

The order appealed from should be affirmed, with ten dollars costs and disbursements.

All concur, except COCHRANE, P. J., dissenting, with an opinion, in which HINMAN, J., concurs.

COCHRANE, P. J. (dissenting):

The agreement between Flanagan and the mortgagee Wells was expressly agreed to be a modification of the mortgages. It had the same effect as if originally it had been made a part thereof. The statement in the agreement is as follows: "As hereinabove modified the two certain mortgages shall stand with the same force and effect, so far as the parties hereto are concerned, as if originally made, executed and delivered in said modified form." The statement limiting the modification to the parties making the same was of course intended to leave unaffected the interest in the mortgaged premises of the infant children of Flanagan who at that time had a remainder interest in an undivided one-half of the property and the estate of his deceased wife who was liable on one of the bonds. I am unable to adopt the reasoning in the prevailing opinion that the mortgages as modified by this agreement did not bind the successors of the parties thereto. This modification agreement having been duly recorded the defendant Ray had constructive notice thereof. When the agreement was made by Flanagan he was the owner of an undivided one-half of the mortgaged premises and was tenant by the curtesy of the other undivided one-half thereof. He, therefore, was the only person interested in the entire produce of the farm and that interest he conveyed to Ray. The modification agreement provided that on a foreclosure of the mortgages the mortgagee " shall be entitled as a matter of right, and without regard to the value of the premises therein described, or the solvency or insolvency of the party of the first part, *or of any owner of said premises*, and without notice to the party of the first part " to the appointment of a receiver. The expression in the above quotation " or of any owner of said premises " lends emphasis to the point that Ray, the present " owner of said premises," is bound by the agreement and that it is not limited to Flanagan

alone. It is undoubtedly true that an agreement in a mortgage for the appointment of a receiver without reference to the value of the property or the insolvency of parties liable on the bond is not conclusive on the court but that the court may refuse to enforce the same if such enforcement seems inequitable. Such is not the case here. Nor on the other hand is the court at liberty to arbitrarily ignore such an agreement. Such a course would nullify and set at naught a contract between the parties. In my opinion the court did not abuse its discretion when it appointed this receiver. It is true that in an affidavit on which the order was granted it was erroneously stated that the interests of the infants were in jeopardy, their interests at that time having been acquired by Ray. But the court could not properly take that statement into consideration because on an application for a receiver by the plaintiff his interests alone were before the court for consideration and it cannot be assumed that the court erroneously appointed the receiver for the benefit of the infants. Other grounds existed for such appointment. The plaintiff did not have to show, as ordinarily he does on such a motion, the insufficiency of the security or insolvency of the parties liable for the indebtedness. After the receiver was appointed he made an agreement with Ray to cut and store the hay on the premises at an agreed price for his services and that of his team and men for which Ray says he " earned including the money paid out for other help the sum of about Three Hundred Fifteen and 50/100 Dollars ($315.50) upon which he has been paid by the said receiver the sum of One Hundred Forty-five and 50/100 Dollars ($145.50) thereby leaving due for said service from said receiver the sum of about One Hundred Seventy Dollars ($170.00)." Ray thus accepted benefits under the receiver and rested on his rights until the receiver had harvested the crops and largely completed the duties of his receivership before he complained thereof. There was a deficiency of over $500 on the sale of the property, thereby proving its inadequacy as a security for the mortgage indebtedness. The judgment herein makes Ray with others liable for the deficiency, but Ray is primarly liable by reason of his later assumption of the mortgage indebtedness. Very likely in the absence of evidence to the contrary there is a presumption that Ray is solvent. If so he has the remedy in his own hands. It is his duty to pay the judgment of deficiency and thus terminate the receivership in the usual manner. One who is able to pay and will not pay a debt the justice of which he does not question is not entitled to the equitable consideration of the court. If on the other hand he cannot pay, the good judgment of the court in appointing a receiver is thereby

17

demonstrated. The order of the court vacating the receivership can be of no practical benefit to Ray because his interest in the property turned over to him by the receiver will be immediately subject to levy under an execution issued on plaintiff's deficiency judgment. Such order directs the receiver to turn over and deliver to Ray all the personal property taken by the receiver " in the same condition as it was when he took possession thereof," and further provides " that if said receiver is unable to turn over and deliver said property in said condition, then that the said receiver account to the said defendant Ray for the value thereof as of the time when he took possession thereof." It may be that an affirmance of this order will make the receiver liable for any damages which may result from a natural depreciation of the property while in his hands and in other respects as well without reference to the question of care and diligence which he may have exercised in the performance of his duties. Neither do I think the question before us depends on the facts as they existed when the receiver was appointed. That is too narrow a view for a court of equity to take. It is well settled that in an equity action judgment is rendered according to the facts existing at the time of the trial. Equally then should this motion be disposed of according to present conditions. Summarizing the foregoing views the receiver was legally and regularly appointed in the discretion of the court; the result of the foreclosure action establishes the propriety of such appointment; the respondent has acquiesced in the receivership and received benefits thereunder and by reason of the deficiency judgment against him can reap no substantial benefit from the order vacating the receivership; and the equities are not with him but with the plaintiff.

I, therefore, favor a reversal of the order.

HINMAN, J., concurs.

Order affirmed, with ten dollars costs and disbursements.