## WESTERN & SOUTHERN LIFE INS. CO. v. CROOK et al.

No. 19590. Opinion Filed July 1, 1930.

Commissioners' Opinion. Division No. 1.

W. F. Semple, W. D. Calkins, Jno. Y. Murry, and Chas. E. Bush, for plaintiff in error.

W. E. Utterback and R. T. Stinson, for defendants in error.

BENNETT, C. This appeal brings to this court for review a judgment of the district court of Bryan county, Okla., rendered on July 11, 1928, denying the application of plaintiff for the appointment of a receiver in the above-entitled cause, and an order made on that date overruling a motion by plaintiff to vacate the order and judgment denying a receiver. The parties, for convenience, will be designated as they appeared in the trial court.

On February 25, 1928, the Western & Southern Life Insurance Company, a corporation, as plaintiff, filed in the district court of Bryan county, Okla., two actions. In the first plaintiff sought judgment against Charles H. and Lucy B. Crook on certain promissory notes aggregating $13,-515, together with interest thereon and an attorney fee of $1,300, and for the foreclosure of a certain real estate mortgage given to secure the payment of said promissory notes upon certain lands, properly described, in Bryan county, Okla. In the second action plaintiff demanded judgment against the same defendants on their promissory notes aggregating $20,147.75, together with certain interests thereon and $1,900 as attorney's fee; also demanding the foreclosure of a certain real estate mortgage given by said Charles H. and Lucy B. Crook to secure the payment of said promissory notes and covering certain real estate (properly described) situate in Bryan county, Okla. Each of said real estate mortgages contained a provision in substance that in the event of default in payment or the breach of any covenant therein the rents and profits of said premises are pledged to the mortgagee, his successors and assigns, as additional collateral security, and that such mortgagee and his assigns should be entitled to possession of the premises through a receiver or otherwise, and that upon institution of proceedings to foreclose, the plaintiff therein should be entitled to a receiver.

These petitions were in the usual form and alleged, inter alia, that, upon default in the terms of said mortgages, the plaintiff was entitled to receive the rents, royalties, and income from said land, and that the mortgaged property was probably insufficient to pay such judgment as plaintiff might recover, and that, unless the court appointed a receiver to collect and preserve the rents, royalties, and income from such lands, plaintiff would suffer irreparable injury.

June 22, 1928, the cases were consolidated and the application for appointment of a receiver was heard. The following stipulation was entered into between the parties:

"It is agreed that the land in controversy, over which the plaintiff is now seeking to have a receiver appointed, was originally owned by Charles H. Crook, a resident of this county, and that since the making of said note and mortgage in question the said Charles H. Crook has been adjudicated a bankrupt, and since the making of the note and mortgage on which these suits are brought the said Charles H. Crook has passed whatever title he had to the American National Bank of Durant, Okla., and it is now agreed that the American National Bank of Durant, Okla., is now the record owner of the land upon which plaintiff has these notes and mortgages. It is further agreed that the American National Bank of Durant, Okla., is not an active concern, but is in process of liquidation, and that the said American National Bank originally was the owner of a second mortgage on said land and acquired title to the same from Charles H. Crook, subject to the indebtedness to the plaintiff, but did not assume the mortgage indebtedness.

"It is agreed that the land is situated about two miles south of Durant, Okla., and is now being worked by tenants who hold under the American National Bank.

"For the purpose of this hearing notice of the exact date of hearing is waived, coun-

sel having appeared to contest the appointment of a receiver.

"It is agreed that the notes due plaintiff are past due and unpaid and there is no controversy between the plaintiff and the contesting defendants, to wit, American National Bank, or its agents or directors, as to the amount due on said indebtedness.

"It is further agreed that the interest which appears on the two loans in the two above cases matured November 1, 1927, and that the defendant, American National Bank, and the defendant, Charles H. Crook, and all other defendants have failed to pay the interest when it was due and that the interest is now delinquent.

"It is further agreed that the taxes for the year 1927 are delinquent and have not been paid by the plaintiff or the present record owners."

Upon consideration of this stipulation and upon other evidence introduced, the court, on July 11, 1928, denied the application for a receiver with respect to each of the consolidated cases, and thereafter on the same date plaintiff filed his motion to vacate the order denying such application upon five grounds, and on the same date the court made an order overruling the motion to vacate, from which plaintiff appeals.

The five assignments of error are as follows:

(1) The court erred in overruling the motion of plaintiff to vacate the order and judgment, etc.

(2) The trial court erred in its order and judgment finding that the property sought to be foreclosed was sufficient to satisfy the plaintiff's mortgage indebtedness, there not being sufficient evidence to support such finding and the same being contrary to the evidence.

(3) The court erred in rendering its judgment denying the appointment of a receiver, for that the same is contrary to law.

(4) The court erred in denying the application for the appointment of a receiver, for the reason that the same is contrary to the contract contained in said mortgages.

(5) The trial court abused its discretion in denying the application for the appointment of a receiver, for that the proof shows that the property is probably insufficient to pay the mortgage indebtedness, that the owner of the property could pay the mortgage indebtedness if they wished to, and that defendants intend to collect the rents for this year and then quitclaim the property to the plaintiff.

Assignments Nos. 1 and 2 are argued together. The argument under this assignment challenges the sufficiency of the evidence to sustain the refusal of the court to appoint a receiver. The pertinent parts of section 518, C. O. S. 1921, are as follows:

"A receiver may be appointed. * * * Second. In an action by a mortgagee for the foreclosure of his mortgage and sale of the mortgaged property, where it appears that the mortgaged property is in danger of being lost, removed, or materially injured, or that the condition of the mortgage has not been performed, and that the property is probably insufficient to discharge the mortgage debt."

The order of the district judge denying the receiver is general and indicates simply that the court is of the opinion that the application for the appointment of a receiver should be denied in each case, without specifying the grounds therefor. His order denying the motion to vacate the order denying the receivership is likewise general. There is no issue as to the breach of the conditions of the mortgage, for that is settled by the stipulation. We must assume that the court found that plaintiff did not make a sufficient showing as to the inadequacy of the property to satisfy the debt, and therefore denied the application for the receiver.

Was the court right in this ruling? The determination of this question will require an examination of the evidence. Several witnesses were introduced by the respective parties. One Tom Moore testified for plaintiff that the property was worth about $65 an acre; if cut into 100-acre tracts, $65 to $75 per acre; that other lands in the community of little better quality had been sold for over $100 an acre; that it is one of the finest farms in that part of the country. Witness tried to sell the land to a few people at $75 to $100 per acre.

Frank Hinds, plaintiff's witness, said that the land was worth from $60 to $70 an acre, and V. R. Rudolph indicated that its value was about the same. A Mr. Whale, for plaintiff, testified that the land was worth $75 or $85 an acre; that 100 or 120 acres just east of the land in controversy sold at $90 per acre net to the owner, and that another place was sold near this land at $100 and that this was of about equal value to the land in controversy. Mr. Calhoon, for plaintiff, gave evidence similar to that given by Mr. Hinds, and, in addition, said that there were two nice homes on the land, one containing seven rooms, one containing five rooms, and three smaller places; also five large barns, and that 560 acres of

the land were in cultivation, which is unusual for a tract of 630 acres; that there was an orchard on the place and that the farm was well fenced, much of it under hog fence, and earning a rental of $4,000 or $5,000 per year. There was other evidence to the same effect.

Ben Brown, a witness for the defendant, indicated that he sold a place near the Crook farm for a little more than $100 an acre. He did not think there was much difference in the land he sold and the land in controversy; that conditions were improving in Bryan county. H. L. Cox indicated that the land was worth $75 per acre and that he thought it could be sold for more than enough to pay the mortgages, and that land a mile east of the Crook farm sold two years ago for $140 an acre; that there were 100 acres in that tract and that it was practically the same kind of land.

It is argued in the brief of plaintiff in error that there was due on the date of the hearing on the first mortgage $15,571.71 and $23,166.45 due on the second, or a mortgage indebtedness against the property of $61.65 per acre.

The appointment of a receiver under section 518, C. O. S. 1921, is a matter within the sound discretion of the trial judge, and an order appointing or refusing to appoint such receiver will not be disturbed, unless an abuse of discretion is shown. McDonald v. Bohling, 102 Okla. 243, 228 Pac. 783; Horn v. Lincoln National Life Ins. Co., 120 Okla. 16, 250 Pac. 74; Willard Oil Co. v. Riley et al., 29 Okla. 19, 115 Pac. 1103. In the last case the court says:

"Moreover, considering the functions of the trial and appellate courts upon the specific question here presented, the rule adhered to by all the courts, enunciated by Mr. High in his recent work on Receivers (4th Ed. 1910) in section 7, is as follows:

" 'The appointment of a receiver pendente lite. like the granting of an interlocutory injunction, is to a considerable extent a matter resting in the discretion of the court to which the application is made, to be governed by a consideration of the entire circumstances of the case. And, since the appointment of a receiver is thus a discretionary measure, the action of the lower court in appointing or denying a receiver pendente lite will not be disturbed upon appeal unless there has been a clear abuse.'

"And, noting the fact that in many of the statutes an appeal from an interlocutory order appointing a receiver will not lie, in section 25, he says:

" 'It may be safely said that, since the appointing or refusing a receiver is largely a matter of sound judicial discretion, even in those states where an appeal is allowed from such interlocutory order, if the testimony addressed to the court below is conflicting, and if that court, after duly weighing and considering the testimony, either appoints or refuses to appoint a receiver, an appellate court will not interfere with the exercise of this discretion, in the absence of any facts showing that it has been abused. And when the testimony is conflicting and the court below has, after hearing, refused to revoke its appointment of a receiver, an appellate court will refuse to control the discretion of the inferior tribunal'."

In Clark on Receivers (2d Ed. 1929) p. 1365, par. 946, the author says:

"The right of a mortgagee to the appointment of a receiver pending a suit for foreclosure rests upon the general principle that the appointment is necessary for the preservation of the property, and its appropriation to pay his or its mortgage debt.

"The power of courts of chancery to appoint receivers is a discretionary power to be exercised with great caution. To appoint a receiver of the property of a mortgagor before final hearing is a strong measure not to be adopted but in a strong case. A receiver should not be appointed unless without it the complainant would be in danger of suffering irreparable loss."

And the same author on page 1366 says:

"The inadequacy of the security and of the legal remedy affords the equitable ground for the appointment of a receiver in foreclosure proceedings. It is also immaterial whether such inadequacy has been caused by the wrongful acts of the mortgagor."

There is nothing in the record to show why there was such a small margin between the debt to be secured and the property protecting the same. There seems to have been 630 acres of land pledged for this debt. A difference of $10, $15, or $20 per acre would aggregate a considerable sum. The mortgagees originally accepted this property as security, and there is competent evidence here reasonably tending to show that the lands were worth $85 or more per acre.

This was an application addressed to the trial court as a chancellor and involved the exercise by him of a sound judicial discretion. The effect of receivership would be to take from the mortgagor his property, in which the plaintiff held only a security, before the property had been sold under foreclosure and before title had passed. We cannot say that, under this evidence, the trial court abused the discretion vested by law in him.

Next assignments, Nos. 3 and 4, are argued together. It is first the contention that the plaintiff is entitled to have a receiver appointed as a matter of legal right and that a denial to the mortgagee of a receivership is a substantial violation of statutory rights possessed by the mortgagee. This contention must be founded upon the contract set out in the mortgage, to wit:

"That upon the institution of proceedings to foreclose this mortgage the plaintiff therein shall be entitled to have a receiver appointed by the court to take possession and control of the premises described herein, and to collect the rents and profits thereon. * * *"

There may be found here and there statements of the court to the contrary, but the general principle is announced in the case of Jacobs et al. v. Real Estate Mortgage Trust Co., 122 Okla. 1, 249 Pac. 930, as follows:

"Subdivision 2 of section 518, Comp. Stats. 1921, defines the conditions under which a receiver may be appointed on application of mortgagees, when suit is brought to foreclose the mortgage. The rights of the mortgagee to have a receiver appointed cannot be given by a contractual provision in the mortgage. Such provision, though not expressly prohibited by the statute, is contrary to public policy, in that the statute points out when such extraordinary remedy may be granted by a court of equity. An order appointing a receiver because of such contractual provision is without the power of the court and should be set aside on motion.

"A clause in a mortgage on real estate which assigns the lease on the same as further security for the payment of the mortgage indebtedness merely gives a lien on same. Unless such condition is shown to exist as that the indebtedness is probably insecure, a receiver to collect rent should not be appointed. Without such a clause, if it is made to appear that the property is probably insufficient to discharge the mortgage debt, a receiver will ordinarily be appointed and the rents conserved to make further secure the indebtedness. Such a clause creates no obligation on the courts to appoint a receiver, but its jurisdiction depends upon the provisions of the statute."

The court in the body of the opinion says:

"The court acquires jurisdiction to appoint a receiver only upon showing that the situation is such that failure or refusal to appoint one would probably work an injury to the plaintiff. Parties cannot, by consent, contract or by stipulation confer jurisdiction upon a court not authorized by law. Model Clothing Co. v. First National Bank of Cushing, 61 Okla. 88, 160 Pac. 450;

Hobbs v. German-American Doctors, 14 Okla. 236, 78 Pac. 356; 34 Enc. Law & Procedure, 106.

"Where the statute authorizing the appointment of a receiver sets forth the conditions under which the jurisdiction of a court can be invoked for that purpose, such conditions must be shown to exist before the court can act, and an agreement of the parties on the subject has no bearing upon the situation, neither is it persuasive upon the court to appoint or refuse to appoint. Finch v. Flanagan, 208 App. Div. 251, 203 N. Y. Supp. 560; Hazeltine v. Granger (Mich.) 7 N. W. 74; Couper v. Shirley (C. C. A.) 75 Fed. 168; Bothman v. Lindstrom, 221 Ill. App. 262; Durband et al. v. Ney et al. (Iowa) 191 N. W. 385; Aetna Life Ins. Co. v. Broeker (Ind.) 77 N. E. 1092, and cases therein cited."

The above doctrine is approved in the case of Exchange Trust Co. v. Oklahoma State Bank of Ada, 126 Okla. 193, 259 Pac. 589. In the body of the opinion the court says:

"We shall next consider the third proposition of the Exchange, being its seventh assignment of error. This assignment presents a proposition which has been decided adversely to the contention of the Exchange in the recent case of Jacobs v. Real Estate Mortgage Trust Co., 122 Okla. 1, 249 Pac. 930, which holds that a contractual provision in a mortgage stipulating for the appointment of a receiver creates no obligation on the court to appoint a receiver, but its jurisdiction to make such appointment depends upon the provisions of the statute."

This same doctrine is reflected in the case of Teal v. Walker, 111 U. S. 242, in which the court says:

"The case of the defendant in error cannot be aided by the stipulation in the defeasance of August 19, 1874, exacted by the mortgagee—that Goldsmith and Teal would, upon default in the payment of the note secured by the mortgage, deliver to Hewitt, the trustee, the possession of the mortgaged premises. That contract was contrary to the public policy of the state of Oregon, as expressed in the statute just cited, and was not binding on the mortgagor or his vendee; and, although not expressly prohibited by law, yet, like all contracts opposed to the public policy of the state, it cannot be enforced."

The same doctrine is laid down in Couper v. Shirley, 9th Cir. Ct. of App., 75 Fed. 168 and Hazeltine v. Granger, 44 Mich. 503, 7 N. W. 74.

In Clark on Receivers (2d Ed. 1929) vol. 2, at page 1369, par. 950, under title "Stipulation in Mortgage Authorizing Receivership," the author says:

110

"Jurisdiction of persons and of the subject-matter of an action is conferred by the sovereignty which creates the court; it therefore follows that a clause in a mortgage, authorizing a court to appoint a receiver, cannot confer jurisdiction as stated above, if the court did not have it. Furthermore, even if the court has undoubted jurisdiction of the persons and of the subject-matter, then such court can only appoint when the usages and rules of equity authorize such appointment, and even then the court has discretion to appoint or not to appoint.

"It therefore follows that a clause in a mortgage authorizing the appointment of a receiver when default is made or otherwise, conveys no absolute right to the appointment of a receiver by the court."

The same author at page 1370 says:

"This being so, the court holds that parties to a mortgage agreement have no power to bind the courts, and authorize the appointment of a receiver independent of any equitable condition which might be shown to exist." (See cases cited under note 102.)

The same author at page 1386, par. 962, under the title "Effect of Rents and Profits Clause in Mortgage," says:

"(a) In New York. The best of reasoning and many authorities in New York hold that even in the case of a clause in a mortgage authorizing a receivership in case of default, the court is not obliged to comply with it." (Citing Brick v. Hornbeck (1897), 19 N. Y. Misc. 218, 43 N. Y. S. 301.)

Under the principle announced and the foregoing authorities, we are compelled to hold that the trial court did not abuse his discretion in refusing to appoint a receiver and in refusing to vacate his order refusing such appointment.

Wherefore the judgment of the trial court is affirmed.

TEEHEE, LEACH, HERR, and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.