In the Matter of the Estate of WILLIAM WICKINGS, Deceased.

Surrogate's Court, Kings County, February 23, 1937.

*Max J. Zisk* [*A. E. Robert Friedman* of counsel], for Emily Richter, petitioner, claimant.

*M. Benjamin Baron,* for William C. Wickings, as administrator, etc.

WINGATE, S.   This is a proceeding for the payment of a claim for rent of premises occupied by the decedent and his family during the months of May to September, 1935, inclusive, amounting in all to $300.

The property in question was originally owned by the claimant, but was subject to a mortgage upon which foreclosure proceedings were instituted in the fall of 1932.   A receiver of rents was duly appointed who acted in that capacity until April, 1936, when she accounted and was discharged by order of the Supreme Court, dated on the twenty-seventh day of that month.   This order, after providing for the payment of her allowance and for the compensation of her attorney further ordered and directed that " she pay the balance then remaining in her hands to Emily Richter, the owner of the equity herein."

In partial compliance with this direction, the receiver on May thirteenth executed and delivered to the claimant an assignment in usual form purporting to assign to her " all rentals or sums of money due for the use and occupancy of premises No. 307 Elmwood Avenue, by the tenant Mr. William Wickings and /or his wife Mrs. Wickings for the months of May, June, July and August, 1935, at $60.00 per month making a total of $240.00."

It should be noted that the foreclosure action was never prosecuted to judgment, but was discontinued and the *lis pendens* canceled, by order dated February 27, 1936.

The mortgagor sold and conveyed the property to an independent third party on February 25, 1936.

On August 30, 1935, a precept in a proceeding seeking the dispossessing of the tenants was issued by the Fifth District Municipal Court of Brooklyn. The proceeding was entitled " Edna M. Waterman," who was the receiver, " Landlord against ' Mary ' Wickings, Tenant, First name of tenant being fictitious and unknown to petitioner. Person intended being in possession of the premises herein described." The relief prayed was granted by default, and a judgment for $240 in favor of the landlord was directed and possession of the premises regained.

Whereas numerous arguments are advanced as to why recovery of this unpaid rent should be denied, the real issues are only four in number and consist of one of fact and three of law.

The issue of fact is raised by the assertion that the daughter of the decedent and not he, himself, was the actual tenant of the premises. This issue, the court, as the trier of the facts, determines adversely to the estate. The court was not impressed with the demeanor of the daughter upon whose testimony the administrator relied for substantiation, nor with the truthfulness or the content of the evidence adduced from her, and accordingly rejects it.

The main legal thesis for defeat of the claim is to the effect that the right to all rentals during the receivership passed to the vendee of the property upon its voluntary sale by the claimant. None of the authorities cited by the respondent to sustain this contention are even remotely in point, since all relate to the disposition of surplus funds realized from a foreclosure sale and no such sale took place in the present instance. In addition, however, the fundamental concepts of the rights of a mortgagor of property are opposed to the thesis advanced.

It is primary that " in this jurisdiction a mortgage on real property constitutes only a lien on the premises mortgaged." (*Holmes* v. *Gravenhorst*, 263 N. Y. 148, 154.) " Title remains in the mortgagor * * * until the lien is foreclosed. Foreclosure

of the lien does not take place upon the commencement of a foreclosure action, but upon a sale under a judgment of foreclosure. Though, during the pendency of the action, a court of equity has power to issue interlocutory orders for the protection of an asserted lien, such orders must be auxiliary to the right to foreclose the lien, and cannot deprive any party of a title or right which though subordinate to the lien of the mortgage, survive and are valid until the lien is foreclosed by a sale under a judgment of foreclosure." (*Prudence Co.* v. *160 West 73rd St. Corp.*, 260 N. Y. 205, 211.)

Perhaps the most fundamental right of an owner of real property is that of receiving the rents and profits or compensation for the use and occupation thereof. It follows, therefore, since the rights of the owner remain unimpaired by the mere institution of a foreclosure action, that his rights to such rents or other compensation are not cut off until the judgment and sale under the foreclosure occur.

In the absence of a stipulation to that effect in the mortgage, the mortgagee possesses no right to the appointment of a receiver pending the foreclosure sale unless he affirmatively demonstrates that in consequence of the peculiar conditions of the property or the lack of financial ability of the mortgagor, the sale under the judgment of foreclosure will probably yield a sum insufficient for the satisfaction of the mortgage lien. (*Finch* v. *Flanagan*, 208 App. Div. 251, 254; *Rabinowitz* v. *Power*, 131 id. 892; *Eidlitz* v. *Lancaster*, 40 id. 446, 447; *W. I. M. Corp.* v. *Cipulo*, 216 id. 46, 51.)

In all cases in which this "extraordinary remedy" (*Finch* v. *Flanagan*, *supra*) is applied, the rents and profits or compensation for use and occupation which are thus taken into *custodio legis* are held merely as additional security for the debt, and are to be applied for this purpose only on the contingency that the primary security of the land itself proves insufficient for the solution of the mortgage obligation. "The receiver holds the rents and profits in trust to apply upon a judgment for a deficiency. Any surplus must be returned to the owner. If there is no sale under a judgment of foreclosure, * * * then all rents and profits must be returned." (*Prudence Co.* v. *160 W. 73rd Street Corp.*, 260 N. Y. 205, 211, 212.)

In the case at bar the contingency expressly treated by the Court of Appeals in the language last quoted, eventuated. The foreclosure action proved wholly abortive as is demonstrated by its discontinuance, with the result that the owner of the property was never divested of her inherent right to the ultimate receipt of the rents and profits of her property, although her authority to collect them as they accrued was temporarily suspended by the

order authorizing their collection by the receiver. The moneys, in so far as they were collected by the receiver, were, as events have proved, at all times held solely for the owner and were so awarded to her upon the termination of the proceeding. In so far as they were not reduced to possession, they remained at all times the potential property of the owner, as and when they became due and payable. The discontinuance of the action and the discharge of the receiver had the effect as to such sums to leave the owner in exactly the same position as if the foreclosure action had never been instituted and the receiver never appointed.

It follows that for all practical purposes, the rental of the premises in question accrued to the claimant in the months when the several installments respectively fell due, although, for the moment, she was restrained from taking steps for their collection. This right, whereas resulting from her ownership of the land, was a purely personal right which would not pass to her vendee on the sale of the land in the absence of an express assignment thereof, which was not made.

The argument that the adjudication in the summary proceeding bars a recovery against the estate on principles of *res adjudicata* is capable of even more ready disposal. The primary purpose of such a proceeding is to recover possession of the premises themselves, as is evidenced by the alternatives for personal service authorized by the second and third subdivisions of section 1421 of the Civil Practice Act. This was originally the sole relief obtainable. (Laws of 1921, chap. 199.) In 1924, however, an addition was made to section 1425 of the Civil Practice Act (Laws of 1924, chap. 514) which authorized a simultaneous judgment for the accrued rent on certain contingencies expressly stated. Obviously, such permissive authority was nugatory as in violation of the due process clause of the Constitution, if the mode of service of the precept failed to comply with the ordinary requirements for jurisdiction *in personam*, either by personal service upon the individual liable for the rent or substituted service pursuant to court order. (*Matter of McDonald*, 225 App. Div. 403, 406; *Brambir* v. *Seifert*, 127 Misc. 603; *Court Square Building, Inc.*, v. *Harris*, 140 id. 542, 544; *Witt-Stuart Realty Corp.* v. *Mantell*, 155 id. 165, 167; *Havemyer* v. *Luttinger*, Id. 586.)

In the present instance, it is impossible to determine the identity of the intended defendant in the summary proceeding, since professedly the first name of such person was unknown to the plaintiff. Since the premises were occupied by the wife and family of the decedent, the inference arises that he, as the responsible head of the household, was the real obligor. No assertion is made that

personal service upon him was effected, wherefore, under the authorities cited, the portion of the judgment which purported to award any recovery in excess of possession of the premises, was wholly nugatory, and a void judgment is incapable of raising an estoppel, and is subject to collateral attack. (*Bell* v. *Bell*, 181 U. S. 175, 177; *Haddock* v. *Haddock*, 201 id. 562, 567; *Pennoyer* v. *Neff*, 95 id. 714, 734; *Hunt* v. *Hunt*, 72 N. Y. 217, 225; *Matter of Bennett*, 135 Misc. 486, 491.)

Finally, as stated, the premises were occupied by the decedent and his wife as the family residence. That housing is a necessary for which a husband is primarily liable is elementary. (*Strong* v. *Skinner*, 4 Barb. 546, 558; *McIlvane* v. *Hilton*, 7 Hun, 594, 596; *Matter of Gatehouse*, 149 Misc. 648, 650.) If any other member of the family agreed to exonerate him from this basic obligation, which has not been proved in the present case, such person would, in effect, become merely a surety in respect thereof and the creditor for the necessaries would not be foreclosed from enforcing the primary obligation of the head of the household in the absence of an express agreement to refrain from adopting such a course. Lacking such an arrangement, of which no intimation is here present, the primary obligor would remain liable until satisfaction of the indebtedness had been accomplished.

It follows in the case at bar that even though the court credited the testimony of the daughter that she personally assumed liability for the use and occupation of the premises — as stated, the court disbelieves and rejects it — this would not serve to exonerate the decedent from his primary liability for payment in the absence of a showing that the landlord had agreed to look to her solely for payment, which has not been demonstrated.

Since it is admitted that the estate is ample to pay this and all preferred and co-ordinate claims, and the time for such payment has arrived, the prayer of the petition, as amended, will be granted, with costs, and the administrator will be directed to pay the petitioner the sum of $300, with interest thereon from September 1, 1935, the date when the last installment of rental was payable.

Enter decree on notice in conformity herewith.